UNITED STATES, Appellee,

v.

Harry L. WARD, Airman Recruit, U. S. Navy, Appellant.

No. 28,781.

U. S. Court of Military Appeals.

May 9, 1975.

---

*Lieutenant Stephen T. Myking*, JAGC, USNR, argued the cause for Appellant, Accused.

*First Lieutenant Ronald J. Waicukauski*, USMCR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress*, USMC.

## OPINION OF THE COURT

COOK, Judge:

The issue presented by this appeal is whether the accused was denied a speedy trial.

The parties agree the accused was placed in pretrial confinement on March 30, 1973. They also agree he was brought to trial on July 31 on all charges outstanding against him, so that the total period of the Government's accountability for the timeliness of the prosecution was 123 days. If nothing further appeared, the charges would have to be dismissed on motion of the defense on the basis of the presumption that an unexplained delay of that length prejudicially violates the accused's right to speedy disposition of the charges. *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). The Court of Military Review concluded, however, that the delay between June 25 and July 31 was attributable to a "desire" by the accused that the charges for which he had been confined on March 30 be tried at the same time as other charges that were processed after his confinement. The court construed the request as an application for a continuance. As periods of delay requested by the defense are excludable from the period of the Government's accountability, the remaining period was insufficient to give rise to the presumption of prejudice. Without the presumption, the length and circumstances of the time required to bring the accused to trial were deemed insufficient to constitute denial of a speedy trial.

Most of the relevant facts are contained in a stipulation admitted into evidence at a hearing on the accused's motion to dismiss all the charges for lack of speedy trial. The stipulation indicates the accused was indicted by the State of Tennessee for auto theft. On learning the accused faced other charges by the military, the civilian district attorney offered to dismiss the indictment so that "all charges" against the accused "might be disposed of" at the same time. The Navy elected to prosecute the auto theft charge with the others for which the accused had been confined on March 30 and as to which an Article 32, 10 U.S.C. § 832, investigation had been completed 57 days earlier. On June 25, trial counsel informed defense counsel of the Government's intention to prosecute the accused for the auto theft. He "offer[ed] to proceed as soon as possible" on the original charges and "dispose" of the auto theft charge "at some subsequent proceeding." Defense counsel advised trial counsel of accused's "desires to be tried on all charges at a single court-martial," but "the choice of how to proceed is up to the government." The next day, trial counsel received the district attorney's "case file" on the auto theft charge. On July 2, trial counsel conferred with the com-

mand staff judge advocate, and they decided "to recommend disposition of all charges at one court-martial." Nothing in the stipulation suggests that defense counsel participated in the decision or that he was even informed of it. Nor is there any indication that after this decision defense counsel agreed to a delay of trial on the original charges for whatever period was required to process the auto theft charge. On the contrary, other evidence at the hearing relating to accused's waiver of the Article 32 investigation of the auto charge emphasizes that the defense was primarily interested in an early trial, and did not regard the expressed preference for a single trial of all charges as making it "chargeable" for even "one day of . . . delay."

■ Our reading of the record convinces us that the accused did not ask the Government to stay or slow the processing of the original charges, and the Government did not agree to do so in response to such a request. The decision as to how the Government would proceed was left entirely to it. The point was made on two separate occasions. The first was on June 25, when defense counsel advised trial counsel that "the choice of how to proceed is up to the government;" the second was in accused's written waiver of the Article 32 investigation of the auto theft charge in which he advised the appropriate court-martial authority that what was done would be entirely "as you deem proper." The accused's stated desire for a single trial of all offenses did not excuse the Government from proceeding with due diligence in the prosecution of each of those offenses. *United States v. Reitz*, 22 U.S.C.M.A. 584, 48 C.M.R. 178 (1974).

Other circumstances are relied upon by the Government to overcome the presumption of prejudicial delay. The principal contention is that, even without accused's consent to the delay, "adequate justification" existed to exclude 41 days from the 123-day period, thereby reducing the Government's accountability to a period less than that giving rise to the *Burton* presumption.

The auto theft was committed on February 28. On March 2, civilian authorities arrested the accused for this offense, and he was later indicted by a grand jury. On March 19, he posted bond, was released by the civilian authorities, and returned to military control. The next material event is that accused was placed in pretrial confinement on March 30 for housebreaking and larceny, committed between March 23 and March 25. On June 20, the county district attorney telephoned trial counsel to advise that he would have the civilian charges against the accused dismissed if the military would prosecute them. Concluding that the military authorities could exercise jurisdiction over those offenses,[1] trial counsel indicated that the Navy would prosecute them. On July 5, charges of auto theft and receiving stolen property[2] were lodged against the accused as additional charges and an Article 32 investigation was ordered. On July 6, the original charges were referred to trial. On the same day, defense counsel orally waived the Article 32 investigation of the additional charges and a written waiver was filed on July 10. On July 15, trial counsel consulted with defense counsel on a trial date, and when the latter refused to waive the statutory period of a 5-day delay between service of charges and trial,[3] trial was set for July 30.

The sequence of events has produced two points of disagreement between the parties. The first deals with the effect of the additional charges on the Government's obligation to bring the original charges to trial with due diligence. The second concerns the date of the beginning of the Government's accountability for prosecution of the additional charges.

■ Speedy trial accountability begins either with imposition of pretrial restraint

1. *See O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); *United States v. Wills*, 20 U.S.C.M.A. 8, 42 C.M.R. 200 (1970).

2. At trial, the accused was acquitted of the alternative charge of receiving stolen property.

3. Article 35, Uniform Code of Military Justice, 10 U.S.C. § 835.

upon the accused or presentment of a formal charge, whichever first occurs. When only a single offense is involved, the determination of the beginning of the Government's accountability is simply a matter of ascertaining the dates of the operative events. However, other problems are introduced if the accused has committed offenses that were not known at the time of imposition of restraint or formal charge, or if offenses are committed after restraint or charge. In those instances, each "set of charges involves a different time of beginning and different steps in the course that . . . [brings] them to trial." *United States v. Mladjen*, 19 U.S.C.M.A. 159, 161, 41 C.M.R. 159, 161 (1969). The beginning date of accountability applicable to the original charge does not attach to the later-discovered or later-committed offense; instead, the period of accountability must be separately calculated. *United States v. Marell*, 23 U.S.C.M.A. 240, 49 C.M.R. 373 (1974)· *United States v. Johnson*, 23 U.S.C. M.A. 91, 48 C.M.R. 599 (1974).

■ When different charges become known, or are committed at different times, two procedural principles are operative. The first is the Manual policy that all known offenses "should be tried at a single trial." Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 31*g*. *The second is that every charge must be speedily brought to trial. This case and others that have come to our attention since Johnson convince us that while the Manual policy on joinder of offenses may provide advantages to the accused as well as the Government, he, not the Court, is better* able to judge whether those advantages outweigh for him the disadvantages of postponement of trial on the original charges. However, preference as to a particular course of proceeding is not the frame of reference for the Court. The Manual provision is only a statement of policy; the speedy disposition of charges for which an accused is confined is a command of Congress. When a provision of the Manual collides with a provision of the Uniform Code, the former must yield to the latter. *United States v. Smith*, 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962); *United States v. Davis*, 11 U.S.C.M.A. 407, 29 C.M.R. 223 (1960). We conclude, therefore, that the intercession of a new charge does not automatically authorize deferment of the trial of the original charges for which the accused had been confined. As more than 90 days elapsed before the accused was brought to trial on the original charges, and he did not, as noted earlier, request delay, and no extraordinary reasons justified delay, the *Burton* presumption was operative, and the original charges should have been dismissed.

Left for consideration is the additional charge and its specification. Appellate defense counsel contend that the Government's accountability for the prosecution of this offense began on March 19.[4] His contention is predicated upon the holding in *Johnson* that accountability for an after-discovered or later-committed offense begins "when the Government . . . [has] in its possession substantial information on which to base the preference of charges." 23 U.S.C.M.A. at 93, 48 C.M.R. at 601. On the surface, the holding would

---

4. Appellate defense counsel contend that on that date naval authorities knew the Federal Government had exclusive jurisdiction over offenses committed within the bounds of the air station and were negligent in not asserting that power against the civilian authorities. *See O'Callahan v. Parker, supra; United States v. Cook*, 19 U.S.C.M.A. 13, 41 C.M.R. 13 (1969). Government counsel contend that the naval authorities had no reasonable basis upon which to contest with the civilian authorities for jurisdiction. On the record, there is no doubt that the civilian authorities acted in good faith belief that they had jurisdiction, especially since the accused was found in possession of the stolen auto while he was in the civilian community and represented to the civilian police that he had purchased the car under circumstances indicating that the transaction was completed in the civilian community. The same circumstances convince us that the naval authorities were justified in accepting the exercise of jurisdiction by the civilian authorities and not investigating the charge because, as the NIS agent testified, it was a "downtown" matter. As the facts do not support the defense contention, we need not consider whether, as a matter of law, the Government can constructively be charged with knowledge of facts that might have been revealed by earlier investigation.

appear to be in conflict with the concept of the separateness of offenses for the purpose of speedy trial. Since the additional charge did not lead to continuation of, or otherwise adversely affect, the confinement imposed by reason of the original charges, the date of the Government's accountability for the additional charge would normally be the date the charge was preferred. Essentially, that was the position taken by the Government in *Johnson* and rejected by the Court. The Court observed that to postpone accountability to preferment of the additional charge, notwithstanding the accused was already in confinement, would impermissibly allow the Government "to proceed in a leisurely fashion." *Id.* The *Johnson* case did not explicate the reason leisurely conduct in such a situation is unacceptable, but the source of its doctrine is the Uniform Code and the Manual. Article 98 of the Code proscribes "unnecessary delay in the disposition of any case of a person accused of an offense." As the provision affects a person in arrest or confinement, the Manual, in paragraph 25, prohibits "saving up" charges, and enjoins the accused's immediate commander, if he learns of an additional charge and believes it "cannot properly be disposed of" by nonjudicial punishment under Article 15, to prefer such charge and "consolidate" it with the existing charges in "one set of charges." Paragraph 32*c*, MCM.

■ Measured by the *Johnson* standard, we are satisfied that the earliest date the auto theft charge could reasonably have been considered by the military was June 26, the day trial counsel received the case file from the district attorney. The stipulation of facts indicates that on March 19, a military lawyer was "detailed to represent" the accused in connection with the charge of unauthorized absence from March 2 to March 19, the period the accused was in custody of the civilian authorities. Al-

though appointed for a limited purpose, the lawyer advised the accused "regarding auto theft and potential administrative discharge proceedings."[5] Further reference to the matter appears in accused's testimony in support of a defense motion to suppress evidence obtained in an allegedly illegal search. The accused indicated that, in his discussion with military counsel, the auto theft was regarded as a "downtown" affair; his testimony further discloses he had obtained civilian counsel to represent him in connection with that charge. No evidence suggests that any person representing the Government had significant information about the auto theft charge as of March 19. An NIS agent, also testifying on the motion to suppress, indicated he learned about March 30 of the auto theft offense, but since the charge was pending "downtown," he did not mention it when he questioned the accused on March 30. Consequently, whether judged only by the evidence on the motion to dismiss, or by all the evidence touching on the matter, the earliest the Government had "possession [of] substantial information" as to the auto theft was when trial counsel received the district attorney's file. The period of accountability for the auto theft charge, therefore, is from June 26 to July 30, the first day of trial. That is too short a time for the presumption of prejudicial delay to be operative under the *Burton* rule. *United States v. Montague,* 22 U.S.C.M.A. 495, 47 C.M.R. 796 (1973). Considering the necessary proceedings on that offense and the fact that the accused refused to waive the statutory period of 5 days that must elapse between service of the charge sheet on the accused and trial,[6] the period is also too short to justify the conclusion that trial of the additional charge was unnecessarily delayed. It follows, therefore, that the accused was not denied speedy disposition of the auto theft

---

5. The fair inference from the description of the advice is that the discharge would be predicated upon conviction by a civilian court, as provided by article 3420240 of the Bureau of Naval Personnel Manual.

6. Article 35, UCMJ, 10 U.S.C. § 835. Of course, the accused has the right to refuse to waive the waiting period, but the resulting period of delay is a factor for consideration in assessing the reasonableness of the time required to bring the accused to trial on this charge.

**26**

charge (Additional Charge I and its specification).

The decision of the Court of Military Review is reversed as to all findings of guilty except those pertaining to Additional Charge I and its specification, and as to the sentence. The findings of guilty as to all charges except Additional Charge I and its specification are set aside, and those charges are dismissed. The record of trial is returned to the Judge Advocate General for submission to the Court of Military Review for reassessment of the sentence on the basis of the remaining findings of guilty.

Senior Judge FERGUSON concurs.

Chief Judge FLETCHER did not participate in the decision of this case.