UNITED STATES

v.

William W. HINES, 223 76 8292 Private
(E–1) U. S. Marine Corps.

NCM 74 1817.

U. S. Navy Court of Military Review.

Sentence Adjudged 8 Jan. 1974.

Decided 26 June 1975.

LT Walter A. Smith, Jr., JAGC, USNR,
Appellate Defense Counsel.

LT Mark D. Wigder, JAGC, USNR, Appellate Government Counsel.

Before WILLIAMS, WRAY, III, and EVANS, JJ.

## DECISION

EVANS, Judge:

Appellant contrary to his plea was convicted of attempting to murder his platoon leader Captain Michael Kanne by striking him with a pair of scissors in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880. The court members sentenced appellant to a dishonorable discharge, twelve years confinement and forfeiture of all pay and allowances. The convening authority approved the sentence, but suspended the confinement exceeding five years.

Appellate defense counsel has asserted the following assignments of error on behalf of his client:

I. APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL.

II. DURING LITIGATION OF THE SPEEDY TRIAL MOTION, THE MILITARY JUDGE BECAME A WITNESS FOR THE PROSECUTION AND WAS THEREBY DISQUALIFIED FROM ACTING FURTHER IN THE CASE.

III. THE STAFF JUDGE ADVOCATE'S REVIEW IS PREJUDICIALLY INADEQUATE.

We hold the assigned errors are without merit.

### I

All parties agree appellant was confined from 2 July 1973 to 17 January 1974. At first blush it appears appellate defense counsel is correct in asserting the Government has invoked the presumptive rule announced in *United States v. Burton*, 21 U.S.C.M.A. 112, 118, 44 C.M.R. 166, 172 (1971):

" . . . [W]e adopt the suggestion of appellate defense counsel that in the absence of defense requests for continuance, a presumption of an Article 10 violation will exist when pretrial confinement exceeds three months. In such case, this presumption will place a heavy

burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed.[1] [footnote omitted]"

■ On the other hand, the law is also clear pretrial confinement must be in connection with the offenses which are the subject of the trial under review. *United States v. Mladjen*, 19 U.S.C.M.A. 159, 161, 41 C.M.R. 159, 161 (1969) and *United States v. Ward*, 23 U.S.C.M.A 391, 50 C.M.R. 273, 1 M.J. 21, pages 23–25 (1975).

The issues to be decided in the context of the *Burton* decision are:

1. The date appellant commenced pretrial confinement.

2. The date trial commenced.

3. The length of delays triggered by appellant.

4. Assuming the *Burton* time presumption became operative, whether there are extraordinary circumstances justifying the delay.

Before reviewing the evidence, we consider the opposing trial lawyers did an excellent job in the processing of the case. Defense counsel labored under difficult conditions. Trial counsel should be commended for his efforts in documenting the evidence covering the issue of speedy trial. In our view trial counsel followed the directions of Chief Judge Duncan set forth in *United States v. Reitz*, 22 U.S.C.M.A. 584, 585, 586, 48 C.M.R. 178, 179, 180.

"We are not unsympathetic with the many problems the Government frequently encounters in bringing an accused to trial. As we said in *United States v. Marshall*, supra, most of these were considered in determining that prosecution must be had within 3 months after the accused's confinement. *If there are extraordinary circumstances or unusual difficulties in prosecuting a particular case, the Government should make them a matter of record* in replying to a defense motion for dismissal of the charges. *Similarly, if there is in fact defense agreement to delay of the prosecution it also should be noted on the*

*record.* Only under such circumstances will this Court be able to make a proper resolution of the issue. Appellate argument, however well-intentioned, cannot be substituted for the facts." [emphasis supplied]

We now turn to the evidence on the issue. On 28 June 1973 appellant stationed at Marine Corps Air Station, Yuma, was at the office of Colonel Friske, his Battalion Commander for the disposition of criminal offenses not the subject of the instant court-martial. As a result of this hearing the Colonel vacated two months confinement resulting from a previous special court-martial. As administrative arrangements were being made to confine appellant in the Air Station brig he assaulted Captain Kanne, his platoon commander. Appellant was hospitalized until 2 July, when he was confined at the Correctional Center at the Marine Air Base, El Toro, California to serve the vacated portion of the special court-martial confinement sentence. Service of this sentence was completed on 20 August.

■ The Government urges since appellant was serving an adjudged sentence he should not be considered as having been in pretrial confinement within the meaning of the rule announced in *United States v. Burton, supra.* If this view is sustained, then appellant had not served ninety days pretrial confinement prior to the first Article 39(a) session on 5 November.

We believe the Government view is sound. In the usual case an accused is confined because he is merely suspected of committing an offense. In our case, appellant *prior* to commission of the assault was bound to be placed in confinement regardless of whether he was under suspicion for another offense. In our view the principal reason for the establishment of the *Burton* presumption was to protect those whose legal status was undetermined when the confinement commenced. Appellant was not a "suspected law breaking" Marine dragged *from* the parade field of MCAS, Yuma and put in the brig under some undetermined cloud of suspicion. During the months of July and August 1974 appellant was to be in confinement *not* because he committed the instant offense. This is not a case where an accused has been subjected to confinement for two unrelated sets of offenses and Government accountability time-wise for each set must be determined. *United States v. Johnson,* 23 U.S.C.M.A. 91, 48 C.M.R. 599 (1974). This is not a case where appellant was confined because he would not behave himself while awaiting trial, *United States v. Brooks,* 23 U.S.C. M.A. 1, 48 C.M.R. 257 (1974). Instead, we are considering the case of an accused who prior to the commission of the charged offense was bound for the brig. He did not enter the brig because he was suspected of committing the charged offense. His guilt as to the confinement triggering offense had already been adjudicated. Therefore, we hold appellant was not serving pretrial confinement within the meaning of *Burton* until 20 August when he completed serving the vacated sentence.

■ A chronology of events shows that on 15 August while appellant was serving his legally adjudged sentence, pretrial investigation of the instant charge commenced. Appellant requested a delay until he could obtain the services of civilian counsel. On 13 September appellant agreed to proceed with the pretrial investigation, represented by detailed defense counsel. The period of 15 August–13 September is not chargeable to the Government. *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974).

The first Article 39(a) session was held on 5 November. Again appellant was granted a continuance to obtain civilian counsel. The Government was ready to try the case. On that date detailed defense counsel indicated there was a possibility appellant would obtain the services of one of two civilian counsel, but no firm decision could be made. In any event, neither of the prospective civilian counsel would be available until the second week of December. The military judge ascertained the accused desired the services of civilian counsel in the face of continuing pretrial confinement. A tentative trial date of 10 December was

set. The court reconvened on 17 January 1974 and trial was completed on 18 January. Before proceeding further, we consider under the circumstances trial for Burton purposes commenced on 5 November. *See United States v. Marell,* 23 U.S.C.M.A. 240, 49 C.M.R. 373 (1974). That decision, of course, stands only for the proposition an Article 39(a) proceedings at which appellant is arraigned and pleads guilty stops the running of "Burton time." The following colloquy at the first Article 39(a) session occurred between the trial judge, trial counsel and appellant:

TC: The government, your honor, is prepared to proceed with the trial.

MJ: How many witnesses does the government have at this time?

TC: *Your honor, the government has four witnesses on the merits and would like to call two witnesses to document the length of time involved from the date of the commission of the alleged offense to the date of trial.*

MJ: You are talking about the issue of speedy disposition of charged in this trial?

TC: Yes, sir. So, it would be six to eight witnesses, your honor.

MJ: Are these witnesses located at this command?

TC: They are, sir.

MJ: In other words, a delay in the case would not work any great disadvantage to the government?

TC: *No, it would not, your honor. We will go on the record and state that the government is ready and willing to proceed today, your honor.*

MJ: *I understand Captain RALPH. However, I am sure that you also desire, as the military judge desires, that the accused be represented by counsel of his own choice.*

TC: *Yes, sir. That is what the government is saying. The government has no objection to a further continuance of this case if it comes about by the accused's own personal request. Otherwise, the government is prepared to continue at this time.*

MJ: Well, Private HINES, you are in pre-trial confinement at the present time, and, of course, you realize that any further delay could very well find you still in pre-trial confinement during this period. What I am asking you is do you wish to proceed at this time with your presently assigned military counsel?

ACC: No, sir, I don't, sir.

MJ: Do you desire to proceed with yourself defending this case, or do you desire a continuance in order to obtain a civilian counsel? Apparently, there would be no objection from the government to such a continuance; however, it hasn't been too successful so far. I would recommend at this time, that if you want a continuance —well, let me ask you this. Is that what you desire at this time?

ACC: Yes, sir. I would like a continuance, sir. [emphasis supplied]

In sum the Government on 5 November was ready and willing to place its evidence before the court members. The appellant elected to continue in confinement while his guilt remained "judicially undetermined," *Marell, Id.* at page 241, 49 C.M.R. at page 374. We believe one of the Government arguments not specifically addressed by Judge Quinn in *Marell* applies in our case. The thrust of that argument was as follows:

"Government counsel contend that the Court of Military Review erred in reversing the accused's conviction. Their argument has two aspects. First, they maintain that for the purpose of determining the end of the period of the Government's accountability for delay, the accused is brought to trial 'by the initiation' of an Article 39(a) session. *Such a session, they argue, places all further proceedings in the case 'beyond the control of the prosecution' and within the sole control of the judge.* As the first Article 39(a) session was held well within the period which must elapse before the presumption of prejudice becomes operative, they con-

clude that the proceedings against the accused were timely." [emphasis supplied]

■ While the prosecutor in the case at bar may have "assented" to the continuance, it was the trial judge who effectively put the commencement of the trial beyond the control of the Government counsel. While disposition of the advanced Government argument was not necessary to decide Marell's cause there is no indication in the opinion the argument would not be valid under the appropriate circumstances. Those circumstances are present in our case. Therefore, we adhere to the view expressed in *United States v. Smith, et al.*, No. 74 2527 (N.C.M.R. 30 January 1975), slip opinion, page 3:

" . . . , [t]hat trial commences and pretrial confinement ends with the first Article 39(a) session, and that in the absence of evidence that the prosecution was not in fact ready to proceed with trial on the merits at that time, the *Burton* presumption will be tolled at that point."

At this point we will review the lapse of time chargeable to the Government. On 28 June appellant was ordered into confinement for offenses not connected with this trial. These offenses and punishment were the subject of legal proceedings, *Manual for Courts-Martial, United States, 1969* (Revised edition), paragraph 97*b* and Article 72(c). After this was accomplished, but prior to the execution of the confinement appellant committed the charged offense. As a result appellant was hospitalized until 2 July when he commenced to serve the unexecuted portion of the vacated confinement. He served this adjudicated confinement until 20 August. While still serving the sentence on 15 August the Government attempted to proceed with the Article 32, UCMJ investigation. The delay from that date until 13 September was for the convenience of appellant. "Burton time" did not commence until 13 September. The initial Article 39(a) session was held on 5 November and another defense continuance granted. For purposes of *Burton* appellant suffered 53 days of pretrial confinement.

■ We now turn to the period of 6 November to 17 January, a portion of which, I believe, may be aptly described as a period of "really extraordinary circumstances." *United States v. Marshall*, 22 U.S.C.M.A. 431, 435, 47 C.M.R. 409, 413 (1973). On 12 November detailed defense counsel requested the Government pay for the services of civilian psychiatrist. This request was denied the next day by the convening authority based on the decision of *United States v. Johnson*, 22 U.S.C.M.A. 424, 47 C.M.R. 402 (1973). Sometime after 5 November and prior to 23 November appellant had decided not to employ civilian counsel and elected to use the services of Captain Karlson, the detailed counsel. The exact date of this decision does not appear in the record. However, in a letter to the convening authority dated 3 December requesting medical inquiry into appellant's mental condition, trial counsel stated:

"3. This request is made in light of the following considerations and events.

a. After the alleged offense, Private HINES had to be placed in a straight jacket and sent to San Diego Naval Hospital.

b. Prior to his Article 32 hearing he refused military counsel.

c. Two delays were granted by the investigating officer to allow time to retain civilian counsel.

d. At the Article 32, Private HINES did finally accept military counsel.

e. Prior to arraignment Private HINES refused to cooperate with his military counsel and sought to dismiss him.

f. A delay was granted by the military judge to allow time for Private HINES to retain civilian counsel.

g. After consulting with several civilian counsel who were contacted by his military counsel, he decided to proceed with military counsel alone.

h. *On November 23, 1973, when he and his military counsel were in the middle of preparation of his defense*

*for a December 10th trial date*, Private HINES went berserk at the MCAS, Yuma brig; assaulting the facility supervisor, causing $1,000.00 damage to government property, having to be restrained in a straight jacket again, and then medically evacuated." [emphasis supplied]

This request, subsequently approved, was known by defense counsel and the accused; and made with their approval. Not only did counsel have knowledge of the trial counsel's request for a mental examination, but he participated in making the examination decision (Compare the facts here with those in *United States v. Ward*, 1 M.J. pages 22–23. In our case the testimony of Captain Rank, USMC, the Marine Corps Air Station, Yuma, staff judge advocate, shows the participation of the defense counsel in the decision. Therefore, the lack of defense participation in the decision to delay trial, considered crucial by Judge Cook in *Ward*, is not present here. The psychiatric examination was completed on 18 December. As a result of the brig incident noted in trial counsel's letter appellant was transferred to the confinement facility at El Toro. He was in maximum security confinement until the examination was held. The report is attached to the record. Briefly stated, the report shows appellant to be a less than reasonable sane person. Defense counsel complained at trial while he may have agreed to the mental examination, he was under the impression it would be accomplished in ten days, when in fact it took 15 days. Be that as it may, we believe the examination was done within the general time frame as agreed upon by defense counsel. We hold the delay period of 23 November to 18 December was, within the meaning of *United States v. Marshall, supra*, occasioned by extraordinary circumstances resulting from appellant's own misconduct.

The case was docketed for trial on 4 January and defense counsel made arrangements for trial. The trial judge's docket sheet attached to the record as an appellate exhibit shows he tried the case as soon as his schedule permitted. We believe the

Government had a reasonable time after the mental examination to prepare for trial. However, assuming the entire period of 19 December to 17 January is for the account of the Government the total "Burton time" does not exceed ninety days. In summary 53 "Burton days" passed prior to the commencement of trial on 5 November. The delay from 6 November to 18 December was caused by appellant's request for civilian counsel and his own misconduct. Again, assuming *without deciding*, the entire twenty-nine day period 19 December to 17 January 1975 was for the account of the Government still does not exceed the ninety day presumptive period.

In the alternative, when proceeding on the assumption the Government is responsible for all confinement from 2 July until 15 August when appellant was serving the vacated sentence we arrive at the following delays sponsored by the Government:

| Party Charged | Time Periods | Days |
|---|---|---|
| Government | 2 July – 14 August | 44 |
| Defense | 15 August – 13 September | |
| Government | 14 September – 5 November | 53 |
| Defense | 6 November – 18 December | |
| Government | 19 December – 17 January | 29 |
| Total days charged to the Government | | 126 |

Therefore, when resolving all doubtful time issues against the Government there was a *Burton* violation of 36 days. However, that does not end the matter. According to the teaching of *United States v. Marshall, supra*, a delay over 90 days may be justified if unusual factors are encountered in proceeding to trial. Chief Judge Darden stated in *Marshall*, 22 U.S.C.M.A. at page 435, 47 C.M.R. at page 413:

"At the risk of redundancy we iterate that when a *Burton* violation has been raised by the defense, the Government must demonstrate that really extraordinary circumstances beyond such normal problems as mistakes in drafting, manpower shortages, illnesses, and leave contributed to the delay. Operational demands, a combat environment, or a convoluted offense are examples that might justify a departure from the norm. Absent these or similar circumstances, the

delay beyond 90 days cannot be justified by a showing that it was caused by difficulties usually encountered in the processing of charges for trial."

We consider there is abundant evidence in this record permitting us to give vitality to the *Marshall* rule of *extraordinary circumstances.* There is clear cut evidence showing the Government timely preferred the charge and attempted to hold the pretrial investigation. At that proceeding appellant requested and was granted a continuance. When trial commenced appellant requested and was granted another continuance. Thereafter, appellant engaged in misconduct requiring additional delay. The report of the sanity evaluation shows this was an extraordinary accused who posed more than normal problems in proceeding to trial. We are of the view the record contains evidence rebutting the presumptive rule of *Burton.* The first assignment of error is rejected.

## II

■ Appellate defense counsel next charges the military judge became a witness for the prosecution when resolving the speedy trial issue. This appellate defense counsel labeled testimony had to do with docketing of the case on 4 January. No controversy surrounded the docketing and we cannot see how it would influence the judge's decision on the speedy trial motion in light of the other substantial evidence presented. We have previously rejected this contention where the judge's remarks were only directed to administrative action taken in setting a trial date. We reasoned in *United States v. Sanchez*, 46 C.M.R. 772, 775 (N.C.M.R.1972), *pet. denied*, 22 U.S.C. M.A. 622 (1973):

"It is our view that the judge's statement is but an impartial commentary on the information contained in [chronology], clarifying his presence at the scheduling conference. Since scheduling a case for trial is a matter concerning the administration of justice, the judge's statement was but a clarification of the prosecution evidence relating to a matter of schedul-

ing, as opposed to delay in the prosecution prior to setting the instant case for trial."

In *United States v. Spence*, 49 C.M.R. 189, 190, 191 (A.C.M.R.) the Army Court held in a similar fact situation:

"To hold that each trial judge would become a witness for the prosecution under these circumstances could obviously lead to all manner of abuses, including the intentional disqualification of any particular judge by counsel for either side, merely by asking him questions about his administrative actions or by asking other witnesses to relate information about actions taken by him in his administrative capacity. Such a situation could unquestionably frustrate the administration of military justice and lead to further delays in the conduct of trials."

We believe the views of our Army brothers reinforce our reasoning in *Sanchez* and strip this assignment of error of merit.

## III

■ Appellant also contends he was prejudiced when the staff judge advocate included evidence in the post-trial legal review that had been excluded by the trial judge. At trial one of the court members asked the victim whether he was in fear of his life during the assault. The witness initially answered in the negative, but then went on to explain that after reflecting on all of the circumstances surrounding the incident he thought appellant was trying to kill him. The judge directed the members to disregard the testimony. The testimony was included in the review. Sage Government counsel concedes error, but points out the tainted evidence was not utilized by the staff judge advocate in his rationalization of the evidence for the benefit of the convening authority. We are persuaded by the Government argument and decline to order a new post-trial review.

Evidence of the assault is uncontroverted. At trial appellant admitted assaulting his superior officer, but denied an intent to kill. Under this posture the staff judge advocate was not required to set out in the review an

elaborate analysis of uncontroverted evidence, *United States v. Hooper*, 11 U.S.C.M.A. 128, 28 C.M.R. 352 (1960). As stated in *Hooper* at pages 130, 354:

> "The differences between the prosecution and defense cases did not involve complicated issues, or the balance of permissible inferences.

> The choices available to the convening authority were virtually spelled out by a statement of the evidence; if he believed the participating and eyewitnesses, the accused was unquestionably guilty. If he credited the defense testimony, there might be a reasonable doubt of the accused's guilt. The staff legal officer informed the convening authority he had to be satisfied that the accused was guilty beyond a reasonable doubt."

However, on the issue of intent the staff judge advocate thoroughly rationalized the evidence, emphasizing appellant's testimony and most importantly not contrasting it with the tainted testimony of Captain Kanne. The reviewer specifically advised the convening authority if he choose to give credence to appellant's testimony he should only approve findings as covered by appellant's plea to a lesser included offense. Therefore, when looking at the entire review the improper inclusion of the excluded testimony in the summary of evidence may be labeled as a minor inaccuracy and could not have influenced the convening authority in his findings deliberation. *See United States v. Morris*, 8 U.S.C.M.A. 755, 25 C.M.R. 259 (1958), *United States v. Sulewski*, 9 U.S.C.M.A. 490, 26 C.M.R. 270 (1958), *United States v. Samuels*, 22 U.S.C.M.A. 238, 46 C.M.R. 238 (1973) and *United States v. Wright*, 40 C.M.R. 895, 899, 900 (A.C.M.R. 1969), *reversed*, as to sentence, 20 U.S.C.M.A. 12, 42 C.M.R. 204 (1970).

Accordingly, the findings of guilty and the sentence as approved by the convening authority are affirmed.

Senior Judge WILLIAMS and Judge WRAY concur in the result.