UNITED STATES

v.

Mario S. REED Seaman Apprentice,
U. S. Coast Guard.

CGCMS 23099.
Docket No. 784.

U. S. Coast Guard Court of
Military Review.

21 Nov. 1975.

Appellate Defense Counsel: LT Patrick
S. Antrim, USCGR.

For the United States: LT G. Alex Weller, USCGR.

## OPINION OF THE COURT

ROSENWASSER, Chief Judge:

The single issue presented by appellant is:

Whether the military judge erred in denying the defendant's motion to dismiss all charges and specifications for lack of a speedy trial.

In the circumstances of the instant case however, the narrow question determinative of the issue may be stated in these words:

In applying the 90-day speedy trial rule, is the Coast Guard accountable for the period when the accused was held in confinement by Federal civil authorities to whom the Coast Guard had surrendered him after obtaining custody of him?

The accused was tried by the instant court-martial on 27 February 1975; 142 days after Air Force police brought his AWOL from Base St. Louis to an end in

California on 8 October 1974. On 9 October he was delivered to the Coast Guard and the following day, 25 hours after receiving him, the Coast Guard in California surrendered him to an agent of the U. S. Secret Service acting in behalf of Federal civil authorities in St. Louis, who wanted him on a charge of forgery of a Government check. The record shows that on the day Reed began his AWOL from Base St. Louis, he had been scheduled to appear before a Federal Grand Jury in St. Louis in connection with the forgery charge. Reed was released by the Coast Guard and turned over to the Secret Service agent on direction from Coast Guard Headquarters in Washington.

Between the date his AWOL ended and the date he was tried by the Coast Guard, Reed was in confinement no more than 132 days. Fifty of these were days he was in pretrial civil confinement on the Federal court charge, until his court-appointed lawyer obtained his release on bond on 29 November 1974. Reed remained free on bond for ten days until he was arraigned in Federal court and pleaded guilty on 9 December 1974. On 20 December 1974 Judge Reagan of the Federal court placed Reed on five years probation, and he was returned to the Coast Guard. Reed's total confinement by Federal civil authorities was 61 days. Without these 61 days, Reed's confinement preceding his court-martial was less than 90 days.

Upon trial by the court-martial, which was convened in St. Louis by the Commanding Officer, Base St. Louis, the defense moved to dismiss all charges based on lack of a speedy trial. After denial of the motion, Reed pleaded guilty to AWOL and to a variety of other offenses, including 13 specifications of bad check offenses committed between 2 August and 3 September 1974. His sentence as approved, extended to a bad conduct discharge, forfeiture of $210 pay per month for four months, and confinement at hard labor for two months. Reed's civilian lawyer testified at the court-martial trial to the effect that he had sought to persuade the Federal court to drop its charge, assuring the court that the Coast Guard would try Reed. He testified:

> I told Judge Reagan exactly what the story was with the Coast Guard . . .
> I tried to make arrangements to get the charges dropped by the United States Attorney, so that Mario Reed could go back to the Coast Guard and have the Coast Guard bring all charges against (him) . . . That was never done.

It is clear that the Federal court insisted on trying Reed, and did try him, for an offense different from those tried by the court-martial.

 Subtracting the 61 days that he was confined by Federal civil authorities, Reed was in confinement less than 90 days preceding his court-martial trial.[1] In our view the Coast Guard was not responsible for the 61 days in question and therefore, under the circumstances of this case, there was no violation of the 90-day speedy trial rule enunciated in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). Apart from the *Burton* rule we find no substantial basis for concluding that the accused was deprived of a speedy trial.

Two reported cases have ruled—and taken opposite stands—on the question of whether the prosecution in a court-martial case is accountable for the time that the accused was held by civil authorities on a civil court's charge when the military service had him first but relinquished custody.

In *United States v. Swartz*, 44 C.M.R. 403 (A.C.M.R.1971) the accused was a soldier who had been AWOL two and one-half years before he was apprehended and brought to Fort Sill, where he was confined and informed of the pending court-martial charge. After three days at Fort Sill, he was released and turned over to Federal civil authorities, who held him in confinement until his trial on non-military offenses. The Federal court judge gave him a suspended sentence, and he was then returned to Fort Sill, almost three months having elapsed. One month later the Army

---

1. Altogether 71 days elapsed between Reed's delivery and his return to the Coast Guard.

court-martial tried him. The Army Court of Military Review declared that the release of the accused to civilian authorities "caused an unnecessary delay prior to disposition of pending charges, and the full impact of the delay involved for such discretionary action must be borne by the Government." The court concluded that the accused had been denied a speedy court-martial trial, set aside the findings and sentence, and dismissed the charge.

The Judge Advocate General of the Army attempted to certify the case to the Court of Military Appeals. However, the Court of Military Appeals refused to accept it, ruling that the certification was inexcusably late. 21 U.S.C.M.A. 666, 44 C.M.R. 948 (8 December 1971). A petition for reconsideration was denied on 27 December 1971.

The Air Force Court of Military Review in *United States v. Steverson*, 45 C.M.R. 649 (1972) expressly rejected the view of *United States v. Swartz*. In the Air Force case the accused, who was in confinement following an AWOL, was released and turned over to civil authorities for prosecution on an auto theft charge. The Court of Military Review held that the military need not account for the time that the accused was in confinement on the civil charge. The Court found applicable the language of *United States v. Williams*, 12 U.S.C.M.A. 81, 30 C.M.R. 81 (1961):

> Detention of an accused by civil authorities for a civil offense, before preferment of any military charge, cannot properly be charged against the Government as part of the time for which it is accountable in determining whether it acted with reasonable dispatch in prosecuting the present offense.

The court also noted that it was Air Force policy to turn over on request a member charged with a felony-type offense. Steverson's petition for grant of review was denied by the Court of Military Appeals on

10 April 1972 (21 U.S.C.M.A. 629), approximately four months after the court had rejected the certificate in *United States v. Swartz*.

As noted above, our Court's view is that, under the particular facts and circumstances of the case before us, the Coast Guard is not chargeable for the time Reed was confined on behalf of the Federal court. Article 14(a) of the Code, 10 U.S.C. § 814a, permits the delivery of a service member to the civil authorities upon request. Departmental regulations in the Coast Guard give restricted authority to commanding officers to effect delivery without referral to Headquarters; at the same time, these regulations recognize that the Commandant (Headquarters) may direct delivery without restriction, Section 0716 C.G.Supp. to M.C.M. 1969. The Coast Guard regulations are consistent with the policy of cooperation with civil authorities which predated the UCMJ.[2] There was no abuse of authority when Headquarters directed that Reed be turned over to representatives of the Federal court, nor was it unreasonable to so direct. Reed had not yet been returned to his unit in St. Louis, the command of the convening authority. Moreover he was suspected of numerous worthless check offenses at military installations, but the scope of his activities in this connection had not yet been ascertained, and required investigation. On the other hand the Federal civil authorities had a firm check forgery charge against Reed. The Manual prescribes the general rule that all court-martial charges against an accused should be tried at a single trial (para. 33*h*) and Headquarters in this case could not reasonably have directed that the AWOL and two related charges be disposed of before turning the man over, and that the bad check charges be disposed of later.

---

2. The 1949 Coast Guard Manual for Courts-Martial in Article 353 stated: "It is the policy of the Coast Guard to cooperate with the civil authorities where persons in the service are charged with the commission of crimes." Commanding officers were instructed to make delivery upon request by a United States Attorney, unless Coast Guard disciplinary proceedings were at an advanced stage or other good reason existed to refer the request to headquarters.

■ Military justice is not unique in its obligation to proceed with reasonable diligence in bringing charges to trial. The Constitutional right to a speedy trial has application in both the civil and the military forums. There is no justification therefore for a military service to refuse to relinquish custody of a member solely on the ground that a potential military charge exists and, under military law, the service is obligated to try him speedily. Both systems of justice have the same fundamental obligation under the same Constitution. The military services have the *Burton* rule; the Federal civil authorities have the Speedy Trial Act of 1974 which, incidentally, excludes any period of delay resulting from other proceedings against the defendant in computing the time within which a trial must commence. 18 U.S.C. 3161(h)(1)(C). Accordingly, when the military service, acting reasonably, defers to the civil authority and permits the civil court to try the member first, it should not be held accountable for the time he is held in confinement by the civil authority.

We hold that the military judge correctly denied the defense motion to dismiss; that the accused's rights under Article 10 UCMJ were not violated, and that he was not deprived of his constitutional right to a speedy trial. The findings and sentence are affirmed.

BRIDGMAN, JR., and YOUNG, Judges (concurring). Appellate Military Judges.

LYNCH, Judge, dissenting in part, concurring in part:

The Opinion of the Court is, in my opinion, too simplistic and fails to recognize and deal with the underlying competing interests inherent in the facts of this case.

The rule of law enunciated in the Opinion of the Court to the effect that the government is not chargeable for any portion of the time that an accused spends in non-military confinement by reason of civilian charges is, in my opinion, incorrect. It is true that the government is not chargeable, or accountable, for a period of confinement by civilian authorities in a situation where a military member is arrested and confined by civil authorities on a civilian charge. *United States v. Williams*, 12 U.S.C.M.A. 81, 30 C.M.R. 81 (1961). (See, however, *United States v. Keaton*, 18 U.S.C.M.A. 500, 40 C.M.R. 212 (1969) for a caveat.) I cannot believe, however, that this principle should be applied blindly to a situation in which a military accused held in confinement by military authorities is voluntarily transferred to civilian authorities upon request, for confinement on civilian charges, particularly where there is a "military hold" filed with the civilian authorities.

The Opinion of the Court, in its penultimate paragraph, discusses the relationship between military justice and civilian justice and concludes that the obligation to provide a speedy trial to an accused is essentially the same. There is no question but that the constitutionally based right to a speedy trial applies equally to both systems of justice. However, the absence of any provision for bail in the military justice system has, in part, brought about a more stringent standard for military authorities to try an accused or release him. See, e. g., *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

The question that must be initially answered in this case can be framed as follows:

"Can the government exclude from accountability a period of confinement by civil authorities on civilian charges when that confinement stems, not from civil arrest, but from the surrender of the military member at a time when he was being held in confinement by military authorities for an offense which the government had substantial information upon which to base preference of a charge, particularly where the civilian confinement is accompanied by a military hold?"

Stated more simply, the question becomes: Can the government interrupt its period of accountability by the simple act of surrendering a military member to civilian authorities for further confinement by them

with a military hold attached. In my opinion, the answer is no. This answer is predicated primarily on two factors. First, the fact that at the time the military confinee was transferred to civilian authorities for further confinement, military authorities had substantial information upon which to base the preference of charges and therefore accountability had begun. *United States v. Johnson*, 23 U.S.C.M.A. 91, 48 C.M.R. 599 (1974). Second, the surrender. of the military confinee to civilian authorities for further confinement on the civilian charge, accompanied by a military hold, insured the continued incarceration of the accused without opportunity for freedom on bail. In other words, had the accused been admitted to bail and released from civilian confinement the military hold would operate so as to result in his immediate return to military confinement.

Therefore, if the case at bar only involved the charge of unauthorized absence a disapproval of the findings and sentence would be compelled by the fact that Reed was apprehended and confined by military authorities for his unauthorized absence and subsequently surrendered with a military hold to civilian authorities for confinement on a federal charge. The time of governmental accountability thus exceeds the 90-day rule without the government having borne the burden of rebutting the presumption of denial of speedy trial. *United States v. Burton*, supra. *United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973).

This case, however, presents a more complicated situation because Reed was tried not only for the unauthorized absence for which he was apprehended but also 13 specifications of uttering bad checks in violation of Article 123a (hereinafter referred to as Charge VI). At the time of Reed's apprehension and confinement by military authorities for unauthorized absence, and at the time of his surrender to civil authorities, the military authorities were aware, generally, that Reed had been extensively involved in uttering bad checks. The details and extent of his activities, were not known and thus required investigation. At the time Reed was surrendered to civilian authorities, the government had substantial, if not all the, information upon which to base the preference of a charge of unauthorized absence; however, the government did not have sufficient information upon which to base the preference of Charge VI and its 13 specifications. Therefore, the issue arises as to whether or not the concept of severability should, or does, apply in resolving questions of speedy trial.

The Court of Military Appeals has, in two recent decisions, applied the concept of severability with respect to speedy trial. *United States v. Ward*, 23 U.S.C.M.A. 391, 50 C.M.R. 273, 1 M.J. 21 (1975). *United States v. Johnson*, 23 U.S.C.M.A. 397, 50 C.M.R. 279, 1 M.J. 101 (1975). As pointed out by the Court of Military Appeals in *Ward*, supra, the underlying problem inherent in a case involving multiple, unrelated charges that have ripened to the preference stage at different times is the clash between an accused's right to a speedy disposition of charges and his right to have all charges consolidated for trial in a single court-martial rather than multiple courts-martial. (Para. 31*g* MCM, 1969 Rev.)

The Court, finding that the right of consolidation of charges contained in the Manual was a statement of policy, held that this policy must yield to the Congressional mandate of a speedy trial. The Court indicated that an accused could elect the consolidation of charges into a single trial rather than obtain a speedy trial on the earliest ripening charge. The Court made it clear, however, that the election belonged to the accused and not the government.

The *Ward* case, therefore, stands for the proposition that in a situation involving multiple, unrelated charges arising, or ripening to the preference stage at different times, the government may not deprive the accused of his right to a speedy trial by assuming an election in favor of consolidation of charges. In my opinion, when the government is faced with a situation such as this, the government is bound by Congressional mandate to proceed speedily on

any charges it has substantial information upon which to base such charges, and if the accused desires to delay the prosecution of these charges in favor of his right of consolidation under paragraph 31*g* of MCM, he must then make an affirmative election waiving any delay of trial attributable to consolidating all charges into a single prosecution.

As stated earlier, at the time Reed was surrendered, with a military hold, to civilian authorities for confinement on civilian charges, military authorities had substantial, if not all the, evidence necessary to prefer the charge of unauthorized absence; however, they did not have sufficient evidence upon which to base preference of Charge VI. This evidence was not in the possession of military authorities until a time when the defendant was unavailable to the military authorities, being in civilian confinement. It should be noted that when the defendant was erroneously set free on bail by the civil authorities, and remained so for 10 days, neither he nor his civilian attorney made any attempt to contact the military authorities to return him to their control. There is an absence of any evidence of a desire on the part of the defendant to have the pending military charges against him speedily disposed of until the conclusion of the civilian matter.

It is my opinion that the finding of guilty of the unauthorized absence must be set aside, since the government failed to overcome the *Burton* presumption with respect to that charge. It is my opinion, however, that government accountability for Charge VI and its 13 specifications did not commence until the government had acquired substantial evidence upon which to base the preference of charges. A stipulation introduced at trial stated that the government's investigation was concluded on December 17, 1974, and Reed was tried on 27 February 1975. Therefore, the *Burton* presumption does not arise with respect to this charge. I concur that there has been no deprivation of his right to speedy trial with respect to this charge and the findings on Charge VI, and its specifications should be affirmed.

In reassessing the sentence, it is my opinion, that the sentence awarded by the Court is appropriate for the findings of guilty of Charge VI and its 13 specifications since they involve repeated instances of uttering bad checks, and should therefore be affirmed.

MAGUIRE, Judge, dissenting:

The problem facing this court is whether a rule established in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), applies to this case. This question presupposes, on the part of the answerer, a knowledge of what the rule is and means. Whatever it is or means, it is not categorical, such that a "violation" of the rule can occur. It is conditional. It is expressed in the form: "If a certain set of circumstances exists, a presumption arises which forces the Government to bear successfully a heavy burden of explanation or to face a flat dismissal of the charges." The presumption, we know, is that a speedy trial has been denied to the accused. In the most recent formulation, the rule is phrased thus:

> ". . . 'in the absence of defense requests for a continuance, a presumption of an Article 10 violation will exist when pretrial confinement exceeds 90 days.'" *United States v. Driver*, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974).

The instant case, unlike the "Driver" case, does not touch on "defense requests" at all, but the court here sees the additional, novel question as "pretrial confinement by whom and for what?"

This assumes a view of the rule that is not implicit in the precise wording of its "Burton" formulation or its "Driver" clarification. The Federal Income Tax laws are notable for frustrating those affected, with "exemptions" and "deductions", but they must respond to a need in us for such matters, for as soon as we are confronted with a "rule" we perceive cause to debate over "exemptions" from this or from that so as to render the rule inapplicable, or applicable but not controlling for some other reason. The view of this court is that

the question is: "Is time spent in confinement imposed by civilian officials deductible from the total time elapsed, such that, if the remainder is 90 days or less, the 'Burton' rule does not apply and no presumption of an Article 10 violation arises?" I am not at all sure that this framing of the issue does not beg a more fundamental question. The question begged deals with the essence of the rule. I conceive that more than one possible answer exists and I submit that the meaning adopted should be one that is not only fair and equitable but also relatively certain of application, not likely to result in an infinite series of challenges and *ad hoc* appellate rulings.

A language problem already exists. The words: "exception," "accountable," "deductible," "chargeable," have already injected an uncertainty into the statements, with different speakers using the same terms in differing contexts. I would like to deal with a couple of these instances in clearing the ground for establishing on a rational basis what I think is, or may well be, the rule.

The decisions in *United States v. Swartz*, 44 C.M.R. 403 (A.C.M.R. 1971) and *United States v. Steverson*, 45 C.M.R. 649 (A.F.C.M.R. 1972) have been argued and discussed. Both, like this case, dealt with a situation in which a military prisoner was turned over to civilian authorities and confined for their purposes until returned to military custodians. The Army court held the "Government" accountable for full term of confinement; the Air Force court held the "Government" not "accountable" for the time in civilian confinement. This court believes that we are free to choose between the two as we find one or the other more persuasive (the Air Force position, as it happens). I do not think the matter is that simple.

Both these cases were decided, in legal contemplation, before the rule announced in the "Burton" case existed. The new rule, I think, required a new meaning for "accountable." The 90-day consideration has injected a potential of new values. Thus, I think, the Army decision is greatly increased in weight by virtue of the "Burton" case rule because if there was "accountability" ascribable when the time period was indefinite it is strengthened by the "90-day" measuring scale, while the Air Force decision is weakened because it was not set up against a rigid, determined requirement. What "accountability" means now requires new thinking, at least.

The rule we deal with is a judge-made rule. Its application cannot be analogized to that of a statute. Particularly, here, I refer of course to the new "Speedy Trial Act," which has indeed stated periods of time for deduction from total time but which also has no reference to confinement as a consideration. The meaning of this rule must be deduced from its own genesis. "Speedy trial" itself is not dealt with by the rule but only speedy trial when confinement before trial is involved. Confinement was a matter of primary concern because of the unavailability of bail in the military system. (There is room to doubt that sufficient analysis of the "bail" concept and the traditional military methods and possibilities has been undertaken, but speculation in this direction is not appropriate here.) For this reason, the existence of the "military hold" on a prisoner detained by civilian authorities becomes something to think about although not necessarily to be exhaustively studied for purposes of fixing a general rule or principle of conduct. Then, too, the issue here involves the admitted belief that Article 10 was intended to place heavier strictures on the military than were then prevailing in the civilian jurisdictions. For this reason, the obvious is reaffirmable; that the 90-day rule does not present to the military a *carte blanche* for delay nor should it appear to extend an invitation to test endurance before the presumption arises.

The first statement of the rule provided for delay caused by defense request not as an "exception" to the rule but as an integral condition of application, regardless of the variety of language since used to discuss it: chargeable, deductible, attributable, accountable, and the like. A postulate

that I concede, made necessary by the context of the rule, is that the beginning of any period to be considered must involve military custody or confinement or connection of the custody or confinement to a military interest. Then the rule is, as I see it, or insofar as it is open to interpretation, should be, that the time period from its beginning to its end is one entire consideration. No "deductions," to attempt to reach by arithmetic subtraction a diminution of time below 91 days, are appropriate or permissible to prevent the application of the rule and the raising of the presumption.

The element of time spent in custody of some other Governmental agency in connection with matters which may well be the subject of possible military action or which just as well may have no connection with the military at all becomes a fact which is part of the circumstances which the prosecution may use to rebut the presumption raised.

The test then would be, for this case, has the Government, with a voluntary surrender of custody of one more than suspected of certain formulated offenses to a civilian authority, maintaining a "military hold" on the party designed to prevent release on bail, on probation, or even after acquittal, using an additional period of 68 days after obtaining body custody of the person before trial, adequately explained under the standards set in the "Burton" and "Marshall" decisions, the lengthy confinement before trial? No attempt to do so appears in the record.

Since the majority, by mechanically applied subtraction, finds that no presumption of improper delay has arisen, the burden is seen to be upon Appellant to have challenged the delay by demand for trial. Appellant, although he had civilian counsel who tried to influence the Federal court proceedings by pointing up the military justice amenability of his client, had no military counsel at all until trial defense counsel was appointed and made available on 24 February 1975.

An "investigation" into Appellant's conduct was begun on 4 September 1974. It was "closed" on 17 December 1974. After Appellant was apprehended on 8 October 1974 it was expected that any bad checks uttered after those which were already known would be disclosed in four to six weeks from that date. This would bring the time needed for a reasonable degree of certainty that all outstanding offenses were accounted for to about 15 November 1974. Although this is the date to be computed for the completion of the "investigation," on the evidence of the responsible investigator, no explanation appears for holding the "investigation" open until 17 December. The confinement of Appellant, no matter in whose custody nor for what reason did not hinder the investigative efforts; to the contrary, it gave a day certain as the terminal date for outstanding bad checks. (The 90-day period, of course, has nothing to do with the date on which the Government had completed assembling its case.) When to this are added the turning over of Appellant to two other, local jurisdictions after his Federal court release, and the effort of Trial Counsel to argue "brief periods of inactivity" (from pre-"Burton" perspective) in connection with Christmas holidays and many persons not being "around," there appears a picture of inexplicable delay.

I recognize again the apparent need of demand for a speedy trial under other-than-"Burton" conditions but, while I adhere to the view that the basic principle of the rule is, or should be, as I have construed it, I see, in sum, three reasons for dismissing the charges in this case:

(1) The full and complete application of the "Burton" rule;

(2) The inclusion of the civilian confinement period in computing the total time even if, as the majority has it, certain periods may be "deducted" before the 90 days may be counted, since the 50 days considered were chargeable to the inscrutable convenience of the Coast Guard; and

(3) The general theory of denial of a speedy trial, despite the absence of specific demands for trial since Appellant did not have the benefit of an

appointed counsel familiar with the rights of the party and the chess-moves requisite to involve Article 10 in other-than-"Burton" situations.

Finally, I may say that I see no reason to chop up the offenses so as to accord "Burton" protection to the AWOL but not to the other offenses. If I am wrong about the meaning of the rule, it just does not operate at all and no presumption arises as to anything.