**UNITED STATES, Appellee,**

v.

**Charles H. McCLAIN, Private First Class, U. S. Army, Appellant.**

No. 29,192.

U. S. Court of Military Appeals.

June 27, 1975.

---

*Captain Preston Wilson* argued the cause for Appellant, Accused. With him on the brief were *Colonel Victor A. DeFiori* and *Captain Winston E. King.*

*Captain Allan A. Toomey* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Captain Joel M. Martel,* and *Captain Robert L. Powell.*

## OPINION OF THE COURT

COOK, Judge:

For two offenses of assault with a dangerous weapon which happened at about the same time and place, the appellant was found guilty and sentenced to a bad-conduct discharge, total forfeitures, and reduction to private E–1. Intermediate reviewing authorities approved and affirmed the findings and sentence. The appellant's petition was granted on a single assigned issue which presented the question whether the appellant was denied a speedy trial.

Claiming that there was a denial of this right, defense counsel, at the time of arraignment, moved to dismiss the charges. By stipulation, trial counsel introduced a chronology of events and agreed that accused had been continuously in confinement from January 9 until July 16, 1973, when trial began. He also called as a witness a judge advocate who was concerned with the processing of the charges against appellant and who prepared the pretrial advice for the convening authority, as required by Article 34, Uniform Code of Military Justice, 10 U.S.C. § 834.

Beginning with January 9, when the offenses occurred, the chronology indicated that during the first 2 months a board proceeding was held to inquire into the appellant's sanity, and there was a delay granted for this purpose in the pretrial investigation required by Article 32, UCMJ, 10 U.S.C. § 832. The sanity inquiry was ordered because of a request, dated January 26, from the officer assigned to conduct the pretrial investigation in which he expressed concern about appellant's sanity. This inquiry accounted for a total of 18 days of the period, inasmuch as the report of the sanity board was not received by the investigating officer until February 12. The second period of delay began on February 14, when the Article 32 investigation was deferred until February 21, at the request of the defense.

Next, the chronology showed that the report of the Article 32 investigating officer was received on March 9 by the staff judge advocate, with his advice to the convening authority being rendered on May 25. On the same day that the advice was received, the convening authority approved the recommendation and ordered that the charges be tried by general court-martial. As to the lapse of time between March 9 and May 25, the staff judge advocate's testimony was pertinent. The staff judge advocate said that shortly after receiving the report of the Article 32 investigation, the military counsel appointed to represent appellant asked that the preparation of the pretrial advice be postponed until both he and the retained civilian counsel could present some matters regarding the mental responsibility of the appellant for the staff judge advocate's consideration. The staff judge advocate agreed to do this, and on March 22, he met with both defense counsel. Near the time of the meeting, a second request for delay was granted to the defense in order to have the appellant exam-

ined by a civilian psychiatrist and to present for consideration of the staff judge advocate whatever was found by the doctor. Subsequently, the staff judge advocate was furnished a letter dated April 6 from the civilian psychiatrist, a Dr. Grossi, who had made the examination. At about this same time, which the staff judge advocate identified as "approximately the first 2 weeks of April," the military defense counsel also presented the staff judge advocate with some information that counsel had developed concerning the possible impact of the drug Mysoline on appellant's responsibility. This drug had been prescribed for the appellant when the offenses occurred. Because of the many factors which had been presented and considered by him, the staff judge advocate indicated he discussed with military counsel for appellant the possible desire of the defense for a "new psychiatric board." After military defense counsel conferred with his civilian counterpart, the staff judge advocate said he was led to believe that they did not want another examination. Consequently, the staff judge advocate claimed he then started working on a draft of his pretrial advice for the convening authority.

In early May, and again at the request of military defense counsel, the staff judge advocate arranged an appointment for him with the convening authority, which meeting took place on May 14. The staff judge advocate said that it was held for the purpose of presenting to the convening authority the same materials regarding appellant's responsibility which previously he had considered. Incident to his testimony concerning this period of time, it was brought out that the civilian defense counsel left the country around the middle of April and was gone for approximately 1 month. However, it was conceded that the Government was not ready to go to trial against the appellant "back in April." Upon the return of civilian counsel, the staff judge advocate said that a second meeting took place at which both defense counsel discussed the case with the convening authority. This later meeting occurred on May 24, and on the following day the pretrial advice was presented to the convening authority. Although the convening authority acted the same day and approved the recommendation that the charges be tried by general court-martial, the chronology shows that the offenses were not, in fact, referred to trial until 2 weeks later on June 8.

A second entry for June 8 shows that trial counsel called the military judge about a trial date. It continues with the statement that the first open date was determined to be July 16, when trial began. Incident to this entry and during the hearing on the instant motion, the military judge, on his own initiative, observed that he had given trial counsel July 16 as the first available date because his own docket was full, but added that he had "invited you, Mr. Prosecutor, to pass on to the Defense if they wished to go to trial prior to today, let me know, and I would procure a Judge from Washington." Upon being asked if he had passed this information on to the defense, trial counsel stated, "[t]he same day that I called . . . [civilian defense counsel and] indicated to him if there was an *emergency* we could provide him with another judge, your Honor" (emphasis supplied). He added that he had not received any request for trial before July 16, upon being asked by the military judge.

The foregoing summary reveals that the appellant was held in confinement for a total period of 187 days before his trial began. The time being more than 6 months and in light of the 90-day standard[1] prescribed by this Court, there is a presumption that Article 10, UCMJ, 10 U.S.C. § 810, has been violated which, in the absence of an adequate showing of diligence by the Government, calls for the dismissal of the charges. *United States v. Burton*, 21 U.S. C.M.A. 112, 44 C.M.R. 166 (1971). The possible effect of this extended period was

---

1. The original formulation of the presumption was predicated upon confinement exceeding 3 months; that was modified to confinement in excess of 90 days. *United States v. Driver*, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974).

recognized when the case was first reviewed.[2] The Court of Military Review also made a passing reference to the time in affirming the findings and sentence. In each instance, it was concluded that the Government had met its heavy burden of showing diligence with the primary delays being attributable to the defense. Therefore, it was held that Article 10 was not violated.

■ This same evidence relating to the motion and recounted above, however, also demonstrates that the amount of delay chargeable to the Government exceeded 3 months. For the purposes of this case, and without definitively assigning to which party the period involved in a sanity inquiry is chargeable, the 18-day delay in the Article 32 investigation for the examination of this accused will not be considered against the Government. Likewise, and in line with *Burton's* recommendation that defense requests for continuance or delay are not chargeable to the Government, we exclude the other 7 days in February that passed without action or progress in the pretrial investigation which had been sought by the defense.[3]

As to the next period of time after the investigation was completed and a report of it received by the staff judge advocate, it was shown that there was, almost immediately, another defense request for a deferral of action. While the date of this request was not specified, March 9 may be reasonably chosen as the beginning. The staff judge advocate did say he had just started reading the file when he was asked to postpone preparing the pretrial advice until the defense could present him other matters relating to the question of accused's sanity. This postponement originally was to be until March 22, when the staff judge advocate met with defense counsel, but continued when he agreed to await a report from a private psychiatrist. The doctor apparently examined appellant near the end of March or the first part of April, with his letter reporting his findings dated April 6. These enumerated incidents are not charged against the Government because they were defense oriented and consumed, at most, 37 days. This figure is accounted for by extending the time through the "first 2 weeks of April," as mentioned above, and identified by the staff judge advocate. Additionally, both defense counsel had declined the opportunity for a "new psychiatric board," which must have occurred before or around April 15 since privately retained counsel for appellant was shown to have been out of the country from about the "middle of April," as stated by the staff judge advocate. The next period covering the last half of April, or about 15 days, the staff judge advocate said that he used to prepare his pretrial advice and was not attributable to the foreign travel of defense counsel since the Government admittedly was not prepared to try appellant "in April."

Continuing with the time involved, and although the defense requests in May for meetings with the convening authority alone seem insufficient to exclude any period other than the time for the meetings, we may be generous because of the nature of the relief that was sought, namely, the dropping of the charges due to appellant's mental problems. Anticipating possible success in their endeavor, we are willing to not include the first 24 days of May in the Government's accountability. Nevertheless, this additional period only increases the period to be excluded to 86 days which deducted from the total period, leaves the Government chargeable with a total of 101 days.

■ The Government has contended that it should not be charged with the time from

2. Because the staff judge advocate to the original convening authority had testified at trial, the record of trial was forwarded to a different officer exercising general court-martial authority for review and initial action.

3. *United States v. Driver, supra.*

June 8 to July 16. Reference is made to the fact that the military judge was not available until July 16 and defense did not request trial counsel to obtain another judge, as had been offered. Trial counsel's report of what he told the defense was that the offer of another judge was hedged with a qualification "if there was an emergency." However, we need not rely on this factor to eliminate any part of the period being charged to defense.[4] An accused and his counsel need not do anything to speed his case to trial. The obligation to proceed with dispatch is solely that of the Government and the obligation is especially heavy when an accused is in pretrial confinement. *United States v. Johnson*, 23 U.S.C.M.A. 397, 50 C.M.R. 279, 1 M.J. 101 (1975); *United States v. Ward*, 23 U.S.C.M.A. 391, 50 C.M.R. 273, 1 M.J. 21 (1975).

■ The Government being accountable for 101 days with nothing further to be deducted, the *Burton* presumption was operative and remained unrebutted. It follows, therefore, that the defense motion to dismiss the charges for denial of a speedy trial should have been granted.

The decision of the Court of Military Review is reversed and the findings of guilty and the sentence are set aside. The charges are ordered dismissed.

Senior Judge FERGUSON concurs.

Chief Judge FLETCHER did not participate in the decision of this case.

---

4. *Cf. United States v. Reitz*, 22 U.S.C.M.A. 584, 48 C.M.R. 178 (1974).