# UNITED STATES

### v.

## Ruben ARAGON, 585 92 0865 Private First Class E–2 U. S. Marine Corps.

### NCM 74 2719.

U. S. Navy Court of Military Review.

16 Sept. 1975.

Appearances: LT Walter A. Smith, Jr. JAGC, USNR, Appellate Defense Counsel.

LT John H. Poag, JAGC, USNR, Appellate Government Counsel.

## DECISION

GREGORY, Judge:

Appellant was tried by a general court-martial military judge. Contrary to his pleas, he was convicted of communicating a threat to injure a hostess at a bar in Iwakuni, Japan, and of both attempting to murder and assaulting with intent to murder a fellow Marine in the bar, in violation of Articles 134, 80, and again 134, Uniform Code of Military Justice, 10 U.S.C. §§ 934, 880. He was sentenced to a bad conduct discharge, confinement at hard labor for two years, forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority approved the sentence without modification.

Appellant has assigned the following errors before this Court:

I. APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL.

II. THE AGREEMENT AMONG ALL WITNESSES CONCERNED THAT APPELLANT WAS HIGHLY INTOXICATED AT THE TIME OF THE ALLEGED ASSAULT, COUPLED WITH APPELLANT'S DENIAL OF CONSCIOUSNESS AT THE TIME IN QUESTION (R. 264–65) AND THE EXPRESS TESTIMONY OF TWO GOVERNMENT PSYCHIATRISTS THAT APPELLANT'S INTOXICATION SIGNIFICANTLY IMPAIRED HIS ABILITY TO ADHERE TO THE RIGHT (R. 282, 298, 327, 375) TOGETHER RAISE A REASONABLE DOUBT THAT APPELLANT POSSESSED THE SPECIFIC INTENT TO KILL.

III. BY PROVIDING EVIDENCE TO EXPLAIN THE DOCKETING DELAY OCCURRING DURING THE PRETRIAL PROCESSING OF APPELLANT'S CASE, THEREBY ASSISTING THE GOVERNMENT TO CARRY ITS BURDEN ON THE SPEEDY TRIAL MOTION (R. 397, 400–01), THE MILITARY JUDGE BECAME A WITNESS FOR THE PROSECUTION.

IV. CHARGE I AND ITS SPECIFICATION AND CHARGE II, SPECIFICATION 2 ALLEGE THE SAME OFFENSE AND SHOULD NOT PROVIDE THE BASIS FOR TWO SEPARATE CONVICTIONS.

V. THE FAILURE OF THE CONVENING AUTHORITY TO TAKE HIS ACTION WITHIN 90 DAYS AFTER APPELLANT'S POST TRIAL CONFINEMENT BEGAN HAS DEPRIVED APPELLANT OF HIS RIGHT TO A SPEEDY REVIEW.

VI. THE STAFF JUDGE ADVOCATE'S POST-TRIAL REVIEW IS PREJUDICIALLY MISLEADING.

We find Assignments of Error I, II, III, and V not to have merit, but we find partial merit with respect to Assignments of Error IV and VI. We consider it appropriate to discuss each assignment briefly.

### I. Speedy Trial

The offenses which form the bases for the charges in this case occurred on the late evening of 15 October 1973 and the early morning hours of 16 October 1973. Appellant had been drinking beer and tequila for several hours in the Bar Charlie Brown in Iwakuni City. He became embroiled in an argument with the bartender and a hostess over whether he received his change after buying a drink and is alleged to have told the hostess "when the bar closes you're dead." Later, as the bar was closing, appellant had an altercation with a Lance Corporal Welsh in which he stabbed Lance Corpo-

ral Welsh with a pocket knife. Lance Corporal Welsh sustained abdominal wounds which penetrated almost to the peritoneal cavity as well as less serious wounds to the left thigh and forearm.

The appellant was placed in confinement on 16 October 1973 as result of these incidents. The initial Article 39(a), UCMJ, 10 U.S.C. § 839(a), session was held on 4 February 1974, at which time the trial was continued to await the arrival of appellant's civilian defense counsel. A period of 111 days elapsed from the initial date of confinement until the date of this final defense-requested delay. Appellant was not in confinement, however, during this entire period. Appellant was released from confinement for psychiatric evaluation at Yokos Naval Hospital from 28 November to 5 December 1973, a total of 7 days, and for further psychiatric evaluation at Camp Kue Army Hospital in Okinawa from 3 January to 18 January 1974, a total of 15 days.

■ This Court has previously held that time consumed in conducting a sanity inquiry is not chargeable to the Government in calculating the applicability of the 90-day presumption laid down in *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). *See United States v. Hines,* No.74 1817, —— M.J. —— (N.C.M.R. 26 June 1975), pet. denied, No. 30,841 (U.S.C.M.A. 3 October 1975); *United States v. Phelps,* No. 75 1901 (N.C.M.R. 20 October 1975). *See also United States v. McClain,* 23 U.S.C.M.A. 453, 455, 50 C.M.R. 472, 474, 1 M.J. 60, 62 (1975). This conclusion is consistent with the Speedy Trial Act of 1974, 18 U.S.C. § 3161(h)(1)(A), which is not applicable to the military but does provide that periods resulting from an examination of defendant and a hearing on his mental competency are excluded in computing the time within which trial must commence in Federal Courts. *See* dissenting opinion of Judge Cook, *United States v. Beach,* 23 U.S.C.M.A. 480, 482, 50 C.M.R. 560, 562, 1 M.J. 118, 120 (1975).

■ Inasmuch as 22 days were consumed in the two psychiatric evaluations of appellant, the *Burton* presumption does not arise

in this case. In the absence of this presumption, the record clearly establishes that there was no "willful, purposeful, vexatious, or oppressive delay by the Government" and that the Government proceeded with reasonable diligence in bringing the case to trial. *United States v. Brown,* 13 U.S.C.M.A. 11, 32 C.M.R. 11 (1962), *United States v. Gray,* 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973).

Appellant was not denied a speedy trial and his first assignment of error does not have merit.

II. Specific Intent to Kill

■ The evidence of record indicates that appellant was intoxicated at the time of these incidents. The appellant's testimony at trial was that he had no recollection of the altercation with Lance Corporal Welsh. There was also evidence that appellant had previously experienced "blackouts" after drinking even moderate amounts of alcohol. Psychiatric evidence introduced by the defense indicated the appellant may have been suffering from psychomotor epilepsy at the time of these offenses. In addition two Navy psychiatrists testified that appellant's intoxication may have impaired his ability to adhere to the right.

Appellant contends that all of this evidence is sufficient to raise a reasonable doubt that appellant possessed the requisite specific intent to kill. There is no question that the issue was raised and, if the court-martial had been constituted with members, that an instruction would have been required concerning the question of partial mental responsibility. *United States v. Somerville,* 48 C.M.R. 885 (N.C.M.R. 1974); *United States v. Vaughn,* 23 U.S.C.M.A. 343, 49 C.M.R. 747 (1975). The appellant was tried, however by a Court composed of a military judge, sitting alone. The issue, therefore, is one of the sufficiency of the evidence presented.

The evidence discloses that appellant had consumed a considerable amount of alcohol. The evidence also discloses, however, that he argued over the correct amount of his

change; that he grappled with several other Marines over possession of the knife after stabbing Lance Corporal Welsh, until finally stating "I give up" [R. 158]; and that he was treated at the emergency room of the dispensary a short time later where he was able to respond to directions concerning treatment for his lacerated thumb and where he advised the corpsman treating him that he was sorry for what had happened and that it had not even been meant for Lance Corporal Welsh [R. 351–356]. These events, both before and after the altercation with Lance Corporal Welsh, appear sufficient for the military judge reasonably to have concluded that appellant was in control of his faculties and aware of what he was doing and capable of forming a specific intent to kill.

After this court-martial had convened and a number of witnesses had testified, the military judge found it necessary to continue the case for a period of approximately two months to allow appellant to be examined further with respect to his mental responsibility and capacity. Paragraph 122, MCM, 1969, (Rev.). During this period, appellant was examined at the Naval Regional Medical Center, Oakland, California. Two Navy psychiatrists who examined appellant subsequently testified that the reported intoxication would undoubtedly have resulted in some impairment of appellant's ability to adhere to the right [R. 282, 298]; however, other than intoxication, these witnesses found no evidence of any mental disease, defect or derangement which would have affected the ability to adhere to the right. [R. 279, 297].

The crucial testimony dealing with appellant's ability to control his actions and recall his participation is considered to be contained in that of one of the Navy psychiatrists, Lieutenant Commander Kasuboski. In response to a hypothetical question concerning the actions of appellant, in light of appellant's statement that he had not meant to do what he had done and that it *had* not been intended for the eventual victim, Lieutenant Commander Kasuboski responded:

Yes, I think that would follow my impression of what actually happened. That I felt that he was struggling to maintain control over his angry impulses and that he displaced his anger on another person. Short of that he might have kicked a chair or an inanimate object.

Q. Did you have that information before you when you made your diagnosis?

A. No.

Q. How would that effect (sic) your determination of his memory in the case?

A. That would indicate to me that he remembered the incident but chose to forget it. [R. 298].

The issue of appellant's ability to form the specific intent to kill was extensively litigated and clearly presented for the military judge's consideration. We find that there was sufficient evidence available to support the military judge's decision in the area, and we concur in that decision.

### III. Military Judge as A Witness For the Prosecution

At the conclusion of the presentation of evidence with respect to findings, the defense moved for a dismissal of the charges on grounds that appellant had been denied his right to a speedy trial following his return from the psychiatric testing and evaluation at Naval Regional Medical Center, Oakland, California. Appellant had returned to Marine Corps Air Station Iwakuni on 7 May 1974, but trial had not resumed until 29 May 1974. Prior to denying this motion, the military judge noted for the record his docket during the period in question and the reasons for his unavailability to resume the trial [R. 297, 400].

Appellant contends that the military judge became a witness for the Government by noting his docketing schedule and should have been disqualified from sitting in this case. Appellant relies in this regard on *United States v. McClain, supra; United States v. Airhart,* 23 U.S.C.M.A. 124, 48 C.M.R. 685 (1974); and *United States v. Wolzok,* 23 U.S.C.M.A. 492, 50 C.M.R. 572, 1 M.J. 125 (1975). We believe this reliance is misplaced. The *McClain* case did not deal

directly with this issue, but rather concerned, *inter alia,* Government accountability for delay due to unavailability of the military judge. In *Airhart,* the military judge was presumed to have authenticated a transcript of testimony from a related case which was introduced at trial. The military judge was held thereby to have become a witness for the prosecution. In *Wolzok,* the issue to be determined was which party was responsible for a docketing delay, not whether the military judge became a witness for the Government.

▇ In our view, the military judge did not become a witness for the prosecution through his recital of past administrative decisions concerning the scheduling of cases. The statements of the military judge in this case are viewed as neutral in nature and favorable neither to the prosecution nor to the defense. This conclusion is consistent with past decisions of this Court and the Army Court of Military Review. *United States v. Sanchez,* 46 C.M.R. 772 (N.C.M.R. 1972); *United States v. Hines, supra; United States v. Spence,* 49 C.M.R. 189 (A.C.M.R. 1974), pet. denied, No. 29,133 (U.S.C.M.A. 11 December 1974).

▇ In addition, in *United States v. Airhart, supra,* where the Court of Military Appeals found the action of the military judge sufficient to make him a witness for the Government, the Court affirmed the conviction of the appellant in that case by applying the doctrine of waiver. As in *Airhart,* the appellant in the instant case did not challenge the military judge. He chose not to argue the administrative decisions of the military judge or his possible disqualification, but elected rather to direct his complaint to the small number of general court-martial judges available and its resultant delay in the continuation of appellant's trial. Under these circumstances, any possible disqualification of the military judge is considered waived.

### IV. Multiplicity of Charges

Appellant correctly points out that Charge I and its specification (attempted murder) and specification 2 under Charge II (assault with intent to commit murder) allege the same offense. Appellant contends that one of these specifications should be dismissed.

Prior to referral of the charges to trial, the convening authority had been advised that a charge of attempted murder did not lend itself to possible lesser included offenses and, for this reason, a charge of assault with intent to commit murder should also be pleaded. [Staff Judge Advocate's pre-trial advice, at 7]. In addition, at trial the military judge recognized the multiplicity of the charges for sentencing purposes. [R. 466].

▇ Where the multiplication of charges is not unreasonable, dismissal of multiplicious charges is discretionary with the trial or appellate Court in the interest of justice. Paragraphs 26*b,* 74*b* (4), 76*a* (5), MCM, 1969, (Rev.); *United States v. Middleton,* 12 U.S.C.M.A. 54, 30 C.M.R. 54 (1960); *United States v. Drexler,* 9 U.S.C.M.A. 405, 26 C.M.R. 185 (1958); *See United States v. Williams,* 18 U.S.C.M.A. 78, 39 C.M.R. 78 (1968); *United States v. Martin,* No. 75 0123 (N.C.M.R. 21 November 1975). We find neither that there was an unreasonable multiplication of charges in this case nor that the multiplicious charges have been reflected in the sentence imposed upon the appellant. Under these circumstances, we would normally not feel constrained to dismiss one of the specifications. In view of our resolution of appellant's Assignment of Error VI, however, and our holding that the convening authority may have been misled concerning the specific intent involved in the alleged attempted murder offense, we find it appropriate in this case to set aside the findings of guilty with respect to that offense (Charge I and the specification thereunder).

### V. Speedy Review

Appellant contends that he has been denied his right to a speedy review and has relied on the rule announced in *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), for this proposition. The

668

appellant was sentenced on 31 May 1974, and the convening authority took his action ninety-one days later on 30 August 1974.

■ Although the *Dunlap* rule requires the convening authority to take his action within ninety days, this rule did not become effective until 21 July 1974. The recent case of *United States v. Slama,* 23 U.S.C. M.A. 560, 50 C.M.R. 779, 1 M.J. 167, decided on 26 September 1975, holds that the *Dunlap* presumption applies only to cases in which the post-trial restraint after the effective date 21 July 1974 exceeds ninety days. Since such delay amounts only to forty days in this case, the *Dunlap* presumption does not become operative in this instance.

■ In the absence of the *Dunlap* presumption, the passage of ninety-one days before the convening authority's action is not considered excessive in this case in view of the seriousness of the offenses and the complexity of the issues involved.

## VI. Staff Judge Advocate's Post-trial Review

■ The post-trial review by the staff judge advocate in this case is of an extremely high caliber. It comprises sixty-six pages and thoroughly and carefully discusses each of the many issues that needed to be taken into consideration by the convening authority. In our opinion, however, the portion of the review dealing with the alleged attempted murder offense creates an impression that an intent to inflict great bodily harm may be sufficient for commission of this offense. Attempted murder, of course, requires a specific intent to kill. *United States v. Carroll,* 10 U.S.C.M.A. 16, 27 C.M.R. 90 (1958); *United States v. Perry,* 46 C.M.R. 636 (A.C.M.R. 1972); *United States v. Creek,* 39 C.M.R. 666 (A.B.R. 1968).

In his discussion of attempted murder, the staff judge advocate also included for the information of the convening authority the elements of the completed offense of unpremeditated murder [SJA Review, at 39]. In this completed offense, the requi-

site intent may be either an intent to kill or an intent to inflict great bodily harm. Paragraph 197c, MCM, 1969, (Rev.). As noted previously, this duality of intent will not suffice where the charge is attempted murder. In this situation, the only intent can be the intent to kill. The review of the staff judge advocate never appears to make this distinction between the two offenses completely clear. In several different places in his review, the staff judge advocate included mention of the intent to inflict great bodily harm.

"It is my opinion, based upon the evidence presented, that repeated stabbing of a person in the abdominal area reflects an intent to kill or to do great bodily harm to the person assaulted." [SJA Review, at 38].

"With regard to the element requiring that the act be done with specific intent to kill unlawfully, it is not necessary when charging the accused with an attempt that it be proved that any person was actually killed. What must be established by legal and competent evidence beyond a reasonable doubt is each element of the offense of murder except that the victim expired. This requirement includes that at the time of the offense the accused had the specific intent to kill Lance Corporal Welsh or to inflict upon him great bodily harm." [SJA Review, at 39].

"Considering the evidence presented in this case, there is sufficient evidence, if believed, to support a finding not only that the accused intended to kill or at least inflict great bodily harm to the victim, but that great bodily harm was in fact inflicted." [SJA Review, at 40].

"If you believe that the act of stabbing the victim was the result of an uncontrolled and involuntary reaction from the accused's hyperventilated state, his conviction on the charge must be reversed because of a failure in the proof respecting specific intent to kill or to cause great bodily harm." [SJA Review, at 43].

It is recognized that these excerpts from the staff judge advocate's review are taken

out of context and that in a number of places in the review the staff judge advocate did mention that an intent to kill was required for the offense of attempted murder. Examining the discussion of attempted murder as a whole, however, we consider there to be a fair risk that the convening authority was led to believe that he need merely be convinced that appellant possessed the intent to inflict great bodily harm and not necessarily an intent to kill.

 Our action with respect to appellant's assignment IV in dismissing Charge I and its specification would normally render this assignment of error moot. Appellant has also contended, however, that the staff judge advocate's advice concerning the attempted murder offense also carries over to the alleged assault with intent to commit murder (specification 2 of Charge II) and that no offense greater than assault involving intentional infliction of grievous bodily harm may now be approved. We do not concur in this contention.

The attempted murder and assault with intent to commit murder offenses are separately treated in the staff judge advocate's review, except for the advice that the evidence is essentially the same with respect to both offenses. The advice concerning the intent involved in the assault offense is not open to misinterpretation. The staff judge advocate stated:

"With regard to the specific intent to commit murder, in order to sustain a conviction for assault with intent to commit murder, you must be satisfied beyond a reasonable doubt that the accused specifically intended to kill Lance Corporal Welsh. A showing that the accused merely intended to inflict great bodily harm will not suffice." [SJA Review, at 48].

We find, therefore, that the convening authority was properly advised with respect to the proof required under a charge of assault with intent to commit murder and that the previous advice concerning the specific intent involved in attempted murder did not affect the convening authority's determination as to the assault offense.

In view of the foregoing, the findings of guilty as to Charge I and the specification thereunder are set aside and this Charge and specification are ordered dismissed. Upon reassessment, we find the sentence still to be appropriate in light of the circumstances surrounding the remaining offenses. We note once again that the specification under Charge I had been held previous to be multiplicious for sentencing purposes with specification 2 under Charge II.

Accordingly, the findings of guilty as to Charge II and the two specifications thereunder and the sentence, as approved on review below, are affirmed.

Senior Judge EVANS and Judge MALLERY concur.