**UNITED STATES**

v.

**Alfredo H. ROMAN, 518 60 8110 Private (E–1) U. S. Marine Corps.**

**NCM 74 0296.**

U. S. Navy Court of Military Review.

Sentence Adjudged 13 April 1973.

Decided 26 Jan. 1976.

---

Mr. Eric A. Seitz, Esq., Individual Defense Counsel LCDR Jeffrey H. Bogart, JAGC, USN, Appellate Defense Counsel 1st Lt Ronald J. Waicukauski, USMCR, Appellate Government Counsel.

Before CEDARBURG, C. J., and WRAY and MURRAY, JJ.

## DECISION

WRAY, Judge:

In a contested general court-martial to a panel of commissioned officer members, appellant, Private Alfredo H. Roman, U. S. Marine Corps, was convicted of the premeditated murder of Private First Class James C. McCrory, U. S. Marine Corps, alleged to have occurred in the vicinity of the U. S. Naval Air Station, Cubi Point, the Republic of the Philippines on 22 September 1972, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. On 13 April 1973 the court members sentenced appellant to confinement at hard labor for the length of his natural life, dishonorable discharge, and forfeiture of all pay and allowances. On 18 October 1973 the convening authority, Commander, U. S. Naval Base, Subic Bay, Republic of the Philippines, approved the sentence.

At trial the issue of appellant's mental responsibility at the time of the alleged murder was litigated and a considerable amount of psychiatric testimony adduced. After the record was initially received by this Court, the defense moved for a stay in the appellate proceedings and for further psychiatric examination and evaluation.

On 28 May 1974 this Court granted the motion by interlocutory order. A medical board was convened and its report, which states appellant possessed: the necessary mental responsibility to understand the difference between right and wrong and to adhere to the right at the time of the alleged murder; and sufficient mental capacity to understand the nature of the proceedings and to conduct and cooperate intelligently in his own defense, now augments the record.

More recently appellant has filed a lengthy brief in which he asserts a number of errors. We need only discuss one. It concerns his contention that he was arbi-

trarily denied the services of one of his military counsel.

The alleged victim, PFC McCrory, and appellant were members of the Marine Barracks at the U. S. Naval Base, Subic Bay. After McCrory failed to show up at his unit he was considered an unauthorized absentee commencing 25 September 1972. Nine days later, on 4 October, his skeletal remains, clothed in U. S. Marine Corps utilities, were recovered from a heavy jungle area of the Naval Air Station at Cubi Point. The degree of soft tissue decomposition of his body due to humidity, insects, and perhaps carnivorous wild hogs, was extensive. Positive identification of his remains was established by dental examination. Death was attributed to massive cranic cerebral trauma caused by repeated blows to PFC McCrory's head from a blunt instrument identified during the trial as a large wrench recovered from the jungle area near the remains.

Strong suspicion focused on appellant, who had been transferred to the continental United States, as one of the individuals criminally responsible for McCrory's death.

On 13 October appellant was apprehended in Burley, Idaho and returned to Subic Bay in a custodial status. He arrived at Subic Bay on 25 October after spending the transient period 14–23 October confined at the U. S. Naval Base, Treasure Island, San Francisco. While at Treasure Island he conferred with Lieutenant Barry M. Johnson, JAGC, U. S. Naval Reserve.

Before appellant arrived at Subic Bay a decision had been made that Captain James D. Bunting, U. S. Marine Corps Reserve, a Marine Corps Judge Advocate, would be detailed as appellant's defense counsel. But, two days before appellant's arrival, Captain Bunting had been sent from Subic Bay to Saigon for temporary additional duty. Captain Bunting was therefore not available to consult with his prospective client when appellant arrived at Subic Bay and was confined.

Apparently aware of appellant's imminent arrival at Subic Bay while he would be in Saigon, Captain Bunting had conferred with Commander Marvin J. Cowell, Jr., JAGC, U. S. Navy, whose position of authority is described in the record as that of staff judge advocate for military law. Captain Bunting requested that Lieutenant Peter R. Cherneff, JAGC, U. S. Naval Reserve be designated as assistant defense counsel.

Commander Cowell approved this request and informed Lieutenant M. Wischkaemper, JAGC, U. S. Naval Reserve, then acting as senior military defense counsel, that Lieutenant Cherneff was assigned to represent appellant. On 25 October Lieutenant Wischkaemper informed Lieutenant Cherneff of this assignment and Lieutenant Cherneff immediately proceeded to the local correctional facility where appellant was confined and established an attorney-client relationship with him.

Charges against appellant were sworn to the following day, appellant was immediately advised of those charges and a pre-trial investigation pursuant to Article 32, UCMJ, was ordered.

The rapidity of these pretrial events was commendable and although Captain Bunting was still in Saigon on 26 October, Lieutenant Cherneff consulted with appellant as the case moved expeditiously toward trial.

Captain Bunting returned from Saigon on 27 October. Five days later, on 1 November, the initial Article 32 investigative session was conducted and on that date, pursuant to Article 38(b), UCMJ, and the *Manual for Courts-Martial, United States, 1969* (Revised edition), paragraph 48*b*, appellant submitted a written request to the Commandant, Twelfth Naval District for the services of Lieutenant Johnson as individual counsel. This request was approved and on 11 November Lieutenant Johnson arrived at Subic Bay.

From then until judicial proceedings commenced on 8 January 1973 with an Article 39(a) session before the military judge, the defense team included appellant's three military lawyers, Captain Bunting, Lieutenant Johnson and Lieutenant Cherneff.

Individual counsel, Lieutenant Johnson, did not remain at Subic Bay after comple-

tion of the Article 32 investigation; he participated fully, however, in the subsequent judicial proceedings before the court members and he also participated in some of the preceding Article 39(a) sessions before the military judge.

On 27 December the charge of premeditated murder was referred to trial by general court-martial. The appointing order detained Captain Bunting as defense counsel but failed to mention Lieutenant Cherneff.

On 8 January appellant submitted a written request addressed to the convening authority. He asked that Lieutenant Cherneff be detailed as assistant defense counsel, accurately stating that the Lieutenant had been previously assigned as his counsel and had formed an attorney-client relationship with him. Moreover, the request indicated that Lieutenant Cherneff had ". . . actively participated in the preparation of [appellant's] case, and it [was appellant's] wish to have him formally detailed as assistant defense counsel so that he may continue to so participate."

On 22 January, at the second Article 39(a) session before the judge, the matter of Lieutenant Cherneff's status was brought to the judge's attention. Trial counsel stated that appellant's written request had been orally denied by the convening authority. The defense desired a written decision and the judge directed that trial counsel obtain a decision in writing which would be appended to the record.

At the time of the third Article 39(a) session, conducted on 29 January, appellant's request of 8 January had not yet been answered in writing. The judge then stated that in view of the convening authority's oral denial the proceedings would go forward ". . . on the basis that the convening authority has in fact denied LT Cherneff as Assistant Detailed Defense Counsel."

On the next day, the defense, in another session without court members, moved to have the trial judge direct the convening authority to detail Lieutenant Cherneff as assistant defense counsel. The matter

presented in support of the motion included an affidavit of Lieutenant Cherneff dated that day, 30 January, in which he reported having been assigned as appellant's counsel and establishing an attorney-client relationship with him on 25 October when he had first discussed several matters concerning the case with appellant. The Lieutenant's affidavit also included the following:

"Subsequent to [25 October], I was directly involved in the preparation of the defense case. My work included interviewing the defendant, researching and developing motions and trial procedures for ROMAN. Some of this work was done in the presence of Captain BUNTING and some was done alone, working strictly with the accused.

At one point during the month of December, I approached Commander COWELL to clarify my status on the case since I had not been officially detailed. He informed me that I was to continue to work actively on the case but that I would not be officially detailed since the Director of the Law Center was unwilling to obligate too many of his personnel to one case.

I continued to assist in the preparation of the subject case. However, *I was not authorized to act in any official capacity at trial* and this has hindered the ability of myself and Captain BUNTING to present the defense case. It is unclear at this time whether I will be permitted to participate further in this case.

My present work assignment within the Law Center is in the Claims division. I am presently involved as counsel in one special court-martial case and am detailed from time to time as defense counsel on incoming cases. My present work level does not preclude my availability as counsel in [this] case. . . ." [Emphasis Supplied.]

After the presentation of extensive argument, the military judge denied the defense motion that he direct that the convening authority detail Lieutenant Cherneff as assistant defense counsel. This Article 39(a) session terminated on 30 January and the

next session before the judge was not conducted until a month later, on 28 February 1973.

In the interim, on 6 February, the defense had received written notification from the convening authority denying appellant's request of 8 January that Lieutenant Cherneff be detailed as assistant defense counsel. This written reply of the convening authority, which was undated, contained no reason for the denial.[1] It was examined by the judge and marked as an appellate exhibit. The heading of this reply indicated that the officer who was the convening authority occupied a number of responsible offices, including that of Commander, U. S. Naval Forces, Philippines.

The second Article 39(a) session conducted the following month was held on 29 March. At this session the defense presented copies of two messages to the trial judge. The earlier of the two was a request of 9 January from the Commanding General, Third Marine Division, Fleet Marine Force, Pacific, located on Okinawa, Japan, addressed to Commander, U. S. Naval Forces, Philippines, Subic Bay, Republic of the Philippines, for the services of Lieutenant Cherneff as individual counsel for an accused in an unrelated case then undergoing an Article 32 investigation. The other message was the reply of Commander, U. S. Naval Forces, Philippines, to the Commanding General, Third Marine Division. It was dated 22 January and stated that due to the high case load at the Subic Bay Law Center, and ". . . [Lieutenant] Cherneff's involvement in priority capital [general court-martial, he is] not presently available as [requested in your 9 January message] as [individual defense counsel.]"[2] *Compare United States v. Gatewood*, 15 U.S.C.M.A. 433, 35 C.M.R. 405 (1965), *with United States v. Davis*, 46 C.M.R. 375 (N.C.M.R. 1971), *petition denied*, 21 U.S.C.M.A. 627 (1972), *and United States v. Barton*, 48 C.M.R. 358 (N.C.M.R.1973), *petition denied*, 22 U.S.C.M.A. 648 (1973).

Although no reason had been given to the defense for denying appellant's request for the continuing services of Lieutenant Cherneff, the Lieutenant was said to be unavailable to participate in an unrelated case as individual counsel because of his involvement in appellant's priority capital case.

The irreconcilable nature of these two positions concerning Lieutenant Cherneff is obvious, and was undoubtedly obvious to the military judge; however, appellant obtained no relief from the judge for the services of the Lieutenant and it was not permissible for the Lieutenant to participate in the adversary courtroom proceedings concerning the premeditated murder with which his client was charged. The trial proceedings therefore went forward to completion without his presence as a member of the defense team and with the results previously mentioned.

Appellant contends that he had a right to the services of Lieutenant Cherneff during his trial and that because he was arbitrarily denied the Lieutenant's services, his conviction cannot stand.

The government takes a contrary position and in its brief asserts that appellant had ". . . no entitlement by statute or otherwise to an assistant defense counsel . . ." whose appointment was solely a matter within the discretion of the convening authority.

Article 27(a), UCMJ, requires the convening authority of a general court-martial to detail defense counsel ". . . and such assistants as *he considers appropriate.* . . ." [Emphasis supplied.] Paragraph 6a of the *Manual for Courts-Martial* amplifies this requirement in stating that the convening authority, who may not delegate these powers, shall detail defense counsel ". . . together with such assistants as he deems *necessary* or *appropriate.*" [Emphasis supplied.]

---

1. The reason for the denial of appellant's request should have been given. *Compare United States v. Keller*, 23 U.S.C.M.A. 454, 546, 50 C.M.R. 716, 717, 1 M.J. 159, 160 (1975), *with*

*United States v. Cutting*, 14 U.S.C.M.A. 347, 352, 34 C.M.R. 127, 132 (1964).

2. This message was released by Commander Cowell.

Neither the statute nor the *Manual* provides any further criteria to be employed by a convening authority in making his decision concerning the assignment of assistant defense counsel. Were we therefore to conclude, as the government suggests, that a convening authority's discretion in deciding whether to detail assistant defense counsel is unbridled, we would unhesitatingly agree with the government that appellant had no right to the services of Lieutenant Cherneff.

But, we do not agree that a convening authority's discretionary power is untrammeled as the government contends. Certainly the convening authority has broad power in determining whether to detail assistant defense counsel. The language of Article 27(a) does indicate, however, that Congress contemplated there would be occasion upon which a convening authority would deem it appropriate to detail assistant defense counsel. Indeed, in a particular case as paragraph 6*a* of the *Manual* states, the assignment of assistant defense counsel may not only be appropriate, but *necessary* in the interests of justice.

■ Whether a convening authority should detail assistant defense counsel is therefore a matter for *sound*, but *not unbridled*, discretion, and will depend upon the facts and circumstances of a given case.

We are aware, as emphasized by the government, that the United States Court of Military Appeals has stated "[t]here is no constitutional provision for, and no reason in logic or sound practice to justify, appointment of a third lawyer for the trial merely because an accused desires one. . . ." *United States v. Jordan*, 22 U.S. C.M.A. 164, 167, 46 C.M.R. 164, 167 (1973).

But, we believe that statement in *Jordan* is inapposite to the facts and circumstances of the instant case.

In *Jordan* the accused appeared in court without his detailed defense counsel whose services he did not desire. Although he was then represented by his white individual civilian defense lawyer he informed the trial judge that he also wanted the services of a black individual military lawyer. The judge advised him that he was not entitled, as a matter of right, to the services of individual military counsel in addition to the services of his individual civilian lawyer. The accused then discharged his civilian lawyer.

An individual military lawyer who met Jordan's racial criterion was subsequently made available to him. The trial went to completion with this military lawyer representing him to Jordan's apparent satisfaction.

On appeal to the United States Court of Military Appeals, Jordan contended that he had been improperly denied the services of his individual civilian lawyer in order to obtain the services of his individual military lawyer.

In deciding against Jordan's appellate position the United States Court of Military Appeals indicated that Article 38(b), UCMJ, entitled Jordan to but one individual defense counsel and that Jordan had been deprived of no right because he discharged his civilian lawyer in order to be represented by an individual military lawyer who met the criterion Jordan had established.

It was with this background that the Court made the above quoted statement in *Jordan* that the appointment of a third lawyer was unnecessary for the trial merely because an accused desired one; however, we find an entirely different background of facts and circumstances in the instant case.

■ Lieutenant Cherneff had established a lawful attorney-client relationship with appellant pursuant to a requirement imposed by the staff judge advocate for military law, Commander Cowell. That relationship flourished for two and one-half months with Lieutenant Cherneff a member of appellant's defense team. His contribution to the team effort had been substantial. Moreover, the evidence establishes that not only was he readily available to continue to act as a member of the defense team, *cf. United States v. Quinones*, 23 U.S. C.M.A. 457, 50 C.M.R. 476, 1 M.J. 64 (1975), but he desired to continue to represent his client and appellant desired that he do so.

Therefore, unlike the accused in *Jordan* who discharged his civilian lawyer and then later complained before the United States Court of Military Appeals about being deprived of the services of that lawyer which resulted from Jordan's own intentional act, in the instant case appellant was totally consistent in his desire for the professional services of his third lawyer, Lieutenant Cherneff. Moreover, appellant had sound reasons for desiring Lieutenant Cherneff, with whom he had formed a strong attorney-client bond, to continue to represent him and protect his interests which were clearly articulated in his letter of 8 January requesting that the convening authority detail the Lieutenant as assistant defense counsel.

The sound reasons given by appellant are to be contrasted with the absence of good cause, or for that matter, any reason given by the convening authority, for the denial of appellant's request. The convening authority apparently assumed, as the government argues, that the decision whether to detail Lieutenant Cherneff as assistant defense counsel was a matter within his unbridled discretion.

The convening authority was, however, in error in making such an assumption and, moreover, also in error in not granting appellant's request in view of the facts and circumstances of this case, particularly the healthy, subsisting attorney-client relationship that then existed between Lieutenant Cherneff and appellant.

Upon deciding not to detail Lieutenant Cherneff as assistant defense counsel, the convening authority effectively denied to appellant the right to the Lieutenant's professional services that had accrued to appellant commencing 25 October as a result of the lawful activity of government agents.

Accordingly, and notwithstanding what the United States Court of Military Appeals stated in deciding the case of *United States v. Jordan, supra,* we find it difficult to conceive of a more *necessary* and *appropriate* case than that of the instant case in which a convening authority would be required to detail as assistant defense counsel the lawyer who had been lawfully engaged for a substantial period in actively participating in the preparation of his client's defense to a charge of premeditated murder. Article 27(a), UCMJ; *Manual,* paragraph 6a.

This error of the convening authority could have been corrected by the trial judge who was provided a number of opportunities to rule that appellant was entitled to the in-court services of Lieutenant Cherneff. The defense presented the judge with a motion for him to direct the convening authority to detail the Lieutenant as assistant defense counsel. Had the judge granted the motion it might have been difficult to enforce; however, the judge had the power to rule favorably on the substance of the motion, Article 58(b), UCMJ, vindicating appellant's assertion of right to have the Lieutenant participate in the trial proceedings.[3] The judge, however, erred as did the convening authority, in not making a ruling favorable to appellant. *See generally United States v. Timberlake,* 22 U.S.C. M.A. 117, 46 C.M.R. 117 (1973); *United States v. Gaines,* 20 U.S.C.M.A. 557, 43 C.M.R. 397 (1971); *United States v. Massey,* 14 U.S.C.M.A. 486, 34 C.M.R. 266 (1964); *United States v. Tellier,* 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962).

Because of the decision of the convening authority and the ruling of the trial judge, Lieutenant Cherneff's skill and expertise were unavailable to appellant during the judicial proceedings which occurred intermittently during a period of more than three months. The benefit appellant lost

---

**3.** Oral argument of appellate counsel in this case was extended and lasted for some two and one-half hours before this Court. In responding to questioning from the bench, appellate government counsel conceded that appellant's continuing entitlement to the professional services of Lieutenant Cherneff, and not the form of the defense motion made to the judge, was the substantive issue presented to the judge for judicial resolution.

We find merit in this concession, but the concession does not affect the result we reach in this case.

because of the Lieutenant's forced absence cannot be measured. Nor is it possible to ascertain with any degree of certainty whether the outcome of the trial would have been any different had Lieutenant Cherneff been allowed to participate in the adversary proceedings.

But any harm suffered in the courtroom by appellant because Lieutenant Cherneff was not there is not the criterion upon which our decision turns.

We conclude that the requirement for the convening authority to have detailed Lieutenant Cherneff as assistant defense counsel was compellingly necessary and not to have done so constituted, as appellant contends, an abuse of discretion which effectively withered and unlawfully severed the attorney-client relationship appellant had with the Lieutenant.[4]

Reversal is therefore required without regard to the amount of prejudice appellant suffered. *United States v. Eason*, 21 U.S.C. M.A. 335, 45 C.M.R. 109 (1972); *United States v. Andrews*, 21 U.S.C.M.A. 165, 44 C.M.R. 219 (1972); *United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970); *United States v. Williams*, 18 U.S.C.M.A. 518, 40 C.M.R. 230 (1969). *See United States v. Catt*, 23 U.S.C.M.A. 422, 428, 50 C.M.R. 326, 332, 1 M.J. 41 (1975).

The findings of guilty and the sentence are set aside.

The record is returned to the Judge Advocate General of the Navy for forwarding to the convening authority. A rehearing may be ordered.

Chief Judge CEDARBURG and Judge MURRAY concur.

---

**4.** Although it was the convening authority who refused appellant's 8 January request that Lieutenant Cherneff be detailed as assistant defense counsel, it would be both unrealistic and unfair not to acknowledge that the convening authority, without a reference book of principles for convening authorities, undoubtedly relied upon the advice of his staff judge advocate in denying appellant's request. That advice is not mentioned in the record; however, in his post-trial written review the staff judge advocate discussed appellant's request. He was of the view that whether Lieutenant Cherneff was detailed as assistant defense counsel was a matter within the convening authority's absolute discretion and therefore there had been no impropriety in denying appellant's request.

Moreover, in his review the staff judge advocate also implicitly justified denial of appellant's request because of the manner in which it was couched. He indicated appellant might

have gained success had he requested the Lieutenant as additional individual counsel, since a denial of such a request by the convening authority could have been appealed pursuant to MCM, 1969 (Rev.), par. 48*b*. The staff judge advocate then correctly observed that appellant never did submit a request for Lieutenant Cherneff as additional individual counsel.

It may be assumed that the reasoning of the staff judge advocate in his post-trial review mirrors the substance of the advice provided the convening authority before he denied appellant's request of 8 January. The deficiency in the reasoning of this advice is that it ". . . discloses a rather callous disregard for the nature of the attorney-client relationship . .," *United States v. Gaines*, 20 U.S.C.M.A. 557, 562, 43 C.M.R. 397, 402 (1971), a bedrock principle of military law. *United States v. Tellier*, 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962).