# UNITED STATES

v.

**Specialist Four Willie B. POWELL, 256–84–6181, US Army, Company E, 4th Battalion, 9th Infantry, 172d Infantry Brigade (Alaska), Fort Wainwright, APO Seattle 98731.**

## CM 433902.

U. S. Army Court of Military Review.

Sentence Adjudged 17 July 1975.

Decided 29 April 1976.

Appellate Counsel for the Accused: CPT R. Stuart Broom, JAGC; MAJ Richard J. Goddard, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Russell S. Estey, JAGC; CPT Lee D. Schinasi, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

DeFORD, Judge:

The appellant was tried and convicted by a general court-martial of carrying a concealed weapon and assault with a dangerous weapon in violation of Articles 92 and 128, Uniform Code of Military Justice (UCMJ) (10 U.S.C. §§ 892 and 928) and received the approved sentence set forth above.

■ The appellant, through counsel, alleges that error was committed in his trial in that the military judge erred by denying appellant's motion to dismiss all charges and specifications because of a denial of speedy trial. We agree.

In *United States v. Burton,*[1] the court held that in the absence of a defense request for continuance, a presumption of an Article 10, UCMJ, violation will exist when pretrial confinement exceeds 3 months. The court stated that the presumption once imposed, would place a heavy burden on the government to show diligence and, in the absence of such a showing, the charges should be dismissed. In the case of *United States v. Driver,*[2] the 3-month rule was changed to 90 days.

In addition, when a presumption of an Article 10 violation has been raised, the government must demonstrate that really extraordinary circumstances beyond such normal problems as mistakes in drafting, manpower shortages, illnesses and leave contributed to the delay. Operational demands, a combat environment, or a convoluted offense are examples that might justify a departure from the norm.[3]

1. *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

2. *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974).

3. *United States v. Marshall,* 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973).

The appellant was placed in pretrial confinement on 27 March 1975 and he continued in that status until the commencement of his trial on 16 July 1975, a period of 111 days.

Government appellate counsel urge that three periods of time during the pretrial processing of the case should be charged to the appellant.

█ The first period involves the trial defense counsel's request to the Article 32 investigating officer to delay his report for a period of 7 days in order that a report of psychiatric testing could be included in the investigating officer's report.

The psychiatric evaluation was conducted at the request of the appellant's battalion commander. A written report was not initially made concerning that examination. However, following the defense counsel's request, a report of sorts was completed and forwarded for inclusion in the file. The report did not raise any issues of mental competency or insanity nor does it appear that such was ever in fact, an issue of any merit.

We note that pursuant to the requirement of the UCMJ [4] the appellant was represented by counsel. He had the right "to present anything he might desire in his own behalf, either in defense or mitigation, . . . " [5] If the trial defense counsel believed the psychiatric evaluation was important, he should have had the matter ready to present at an appropriate time during the Article 32 proceeding. Accordingly, we conclude that the 7-days delay in the forwarding of the Article 32 report was properly chargeable to the defense.[6]

█ The second period of delay concerns a period of 14 days beginning on 3 June 1975 (69th day) and ending on 16 June (82nd day).

Routine, but somewhat slow, pretrial processing resulted in an Article 39(a) session being convened on 3 June 1975 at Fort Wainwright, Alaska. Counsel for both the prosecution and the defense indicated they were ready for trial at which time the appellant made known his desires to have a named civilian counsel. At this hearing the military judge inquired of the trial defense counsel concerning whether he had advised the appellant of his rights to counsel. Trial defense counsel responded that he had, however, the appellant had advised him he didn't fully understand those rights until the instant Article 39(a) session.[7] The military judge directed the appointed defense counsel to contact the civilian counsel and determine whether that counsel would be available to represent the appellant. The defense counsel was directed to advise the court as soon as possible. A second Article 39(a) session was convened on 5 June 1975 to resolve the issue of appellant's counsel.[8] The appointed defense counsel advised the court that named civilian counsel was not available and he had contacted a second civilian attorney, however, the appellant could not meet that attorney's fee requirements. The appellant advised the court that he would go to trial with the appointed defense counsel and requested a Captain W as individual military counsel. The military judge directed the request for individual counsel be placed immediately in military

4. Article 32(b), UCMJ.

5. *Id.*

6. *See also United States v. Lyons*, 50 C.M.R. 804 (A.C.M.R. 1975).

7. We note that at page 51 of the record, the appellant was advised of his right to counsel at his initial meeting with his appointed defense counsel on 28 March 1975. He further indicated that his desires with regard to civilian counsel were made known to a counselor in the confinement facility immediately following his confinement on 27 March 1975. In addition, he requested assistance from his wife in hiring a civilian lawyer.

8. Notwithstanding the government's assertion at the two Article 39(a) sessions that they were ready for trial, it appears that the witnesses had not been assembled and the government as well as the defense would require at least a day or two for that purpose. It is obvious from the record that these Article 39(a) sessions were for the purpose of resolving appellant's right to counsel as well as any other pretrial administrative matters which may have required resolution.

channels. Trial counsel advised the court that he would take action that day to contact the JAG office at Fort Richardson by telephone to get a determination of Captain W's availability. The appellant then requested a continuance for that purpose. The stipulation of fact indicates that the documentation concerning the appellant's request for Captain W was not forwarded to the convening authority until eight days later on 13 June 1975. The convening authority denied the request on 17 June 1975. However, his decision was not communicated to the appellant until 23 June 1975, some 18 days after the initial request for Captain W was made at the Article 39(a) session on 5 June 1975.

Normally, the availability of requested counsel is handled verbally or by telephone followed by the forwarding of formal documents or messages for inclusion in the record at a later date. This type of action was contemplated by the trial counsel at the Article 39(a) session but for reasons unknown was not used. Here, the matter appears to have been handled formally. The convening authority, the appellant, and the requested counsel were all located at the same installation. There is no indication in the record that the convening authority or the requested counsel were unavailable during this particular period. We believe that an inordinate amount of time was consumed in determining the availability of Captain W.

Although the appellant had requested a continuance for the purpose of determining the availability of counsel, the government is still charged with the requirement of diligence in pretrial processing and is accountable for any dilatory actions which result in a longer delay that should otherwise occur.

Accordingly, we believe that the defense should be charged with the delay beginning on 3 June 1975 (the date of the first Article 39(a) session) and ending on 12 June 1975, a period of 10 days. We believe this period of time was more than adequate to determine whether Captain W was reasonably available under the factual situation in this case.

Lastly, government appellate counsel urge that a period of 17 days beginning on 21 June 1975 and ending on 7 July 1975 should be charged to the defense.

The record reflects that a list of courses available at The Judge Advocate General's School was circulated in The Judge Advocate's office at Fort Wainwright and all officers were advised to indicate their interest as some travel funds were available for that purpose. Appellant's trial defense counsel indicated a desire to attend a course during the period in question. A request was forwarded under the signature block of the Staff Judge Advocate to the Command Chief of Staff recommending the trial defense counsel's attendance as the "training is essential for Captain Smith and in the best interest of the service." This recommendation was approved on 17 June 1975.

That same day the convening authority disapproved the appellant's request for individual counsel.

This latter decision was not communicated to the trial defense counsel, nor was the appellant informed of that decision until 23 June 1975, some two days after the trial defense counsel had departed on his TDY trip.

The trial defense counsel departed the command on 21 June 1975 to attend the short course at The Judge Advocate General's School, and returned on 7 July 1975. During the period of his absence he took three days leave.[9] A request by the defense for a continuance had not been made.

■ At the outset, it must be kept in mind that the accused and his counsel need not do anything to speed his case to trial.

---

9. The record is vague as to whether the appellant was aware of the trial defense counsel's departure on TDY. During the period, appellant contacted the military justice section at Fort Richardson and requested the assistance of counsel in making a demand for speedy trial.

Appellant made such a demand on 27 June 1975, the 93rd day of his incarceration, but there is no evidence that any effort was made to return trial defense counsel from TDY in order to expedite the disposition of this case.

The government must proceed with dispatch and its responsibility is especially heavy when the accused is in pretrial confinement.[10]

■ The issue here is whether the trial defense counsel can request TDY for the purpose of "continuing legal education" and charge that period to the appellant.

The benefit of further legal education no doubt could have some potential benefit to the appellant. However, we believe the real gain from such an experience inured to the benefit of the individual counsel and as well as the government as a result of his subsequent service.

It has been held that although not every request for delay should be chargeable to the accused, this exclusion does not apply when a continuance or delay is granted solely for the convenience and benefit of the accused.[11]

Here, there is little doubt that the trial defense counsel's departure delayed the trial. However, it cannot be said that the request of the trial defense counsel was solely for convenience or benefit of the appellant. The final decision on whether this officer attended the course of instruction remained with the government.

If the trial defense counsel was not concerned about his responsibilities to the appellant, the government should have been. As we heretofore have noted on the very day the request for school was approved, the convening authority denied the appellant's request for individual military counsel. It cannot be said that the government

was unaware that the trial defense counsel was at that point, the sole counsel of the appellant.

As this Court has noted in the past, "When the government has control of the procedures required to effect timely disposition of criminal charges, neither its good faith nor inadvertent negligence can excuse inordinate delay in bringing the accused to trial."[12]

Accordingly, we hold that the period the trial defense counsel was TDY at The Judge Advocate General's School should not be charged as defense delay.

■ One further matter requires our attention. During the foregoing period of TDY, the trial defense counsel took three days' leave.

Defense counsel's leave normally is not considered an extraordinary circumstance to be considered under the Burton doctrine.[13]

Leave of the trial defense counsel may under some circumstance be properly chargeable to the defense.[14] However, here, the same rationale as was applied above concerning the TDY trip of the appellant's counsel must include the leave of counsel.

The government made no attempt to have the trial defense counsel returned to the command. As heretofore noted, the ultimate responsibility for diligently processing the case rested with the government.[15] Accordingly, we hold that none of

---

10. See also United States v. McClain, 23 U.S.C. M.A. 453, 50 C.M.R. 472, 1 M.J. 60 (1975); United States v. Johnson, 23 U.S.C.M.A. 392, 50 C.M.R. 279, 1 M.J. 101 (1975); United States v. Ward, 23 U.S.C.M.A. 391, 50 C.M.R. 273, 1 M.J. 21 (1975).

11. United States v. Driver, supra; United States v. Marshall, supra.

12. See United States v. McElvane, 50 C.M.R. 732, 740 (A.C.M.R. 1975) and the cases cited therein.

13. See United States v. Marshall, supra; United States v. Perkins, 51 C.M.R. 7, 1 M.J. 571 (A.C.M.R. 1975).

14. See United States v. Lyons, supra; United States v. O'Neal, 48 C.M.R. 89, 93 (A.C.M.R. 1973).

15. The relationship between appellant and his appointed counsel throughout the entire period of the pretrial processing was at best "shaky." We find it difficult to understand that the trial defense counsel would consider departing the command or that the command would allow him to depart to attend a short course when his responsibilities to the appellant remained unfulfilled. Even if Captain W had been made available as individual military counsel, the trial defense counsel's services were still required in behalf of the appellant until relieved by his client, if ever.

the foregoing periods of delay should be attributed to the appellant.

In summary, only 17 of the 111 days required for processing the appellant's case can be attributed to the defense. Accordingly, as 94 days are still chargeable to the government, the *Burton* presumption was triggered. The charges were essentially of a simple character and the witnesses were all known and available for trial. We find that no exceptional circumstances have been demonstrated by the government which would overcome the foregoing presumption. Although unusual for this command, the government simply failed to apply appropriate management techniques to insure pretrial requirements were accomplished expeditiously.

The other assignments of error have been considered and deemed to be without merit or are mooted by our action herein.

The findings of guilty and the sentence are set aside and the charges are dismissed.

Senior Judge BAILEY and Judge COOK concur.

**UNITED STATES**

v.

**Private First Class Tommy D. MURRAY, 528–86–8298, US Army, Battery C, 3d Battalion, 71st Air Defense Artillery, APO 09047.**

**CM 433923.**

U. S. Army Court of Military Review.

Sentence Adjudged 23 Sept. 1975.

Decided 29 April 1976.

Appellate Counsel for the Accused: CPT Stephen D. Halfhill, JAGC; CPT Lawrence E. Wzorek, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Richard S. Kleager, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.